### Mary Hall v. Department of Social Welfare

[572 A.2d 1342]

No. 86-216

Present: Allen, C.J., Peck and Gibson, JJ., and Connarn, D.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed January 19, 1990

*William A. Hunter*, Ludlow, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Ron Shems* and *Jane Gomez*, Assistant Attorneys General, Waterbury, for Defendant-Appellee.

**Allen, C.J.** This is an appeal from two decisions of the Vermont Human Services Board (Board) affirming denial by the Department of Social Welfare (Department) of petitioner's applications for food stamps and fuel assistance. We affirm.

The Department terminated petitioner's food stamp eligibility in 1984 due to her alleged failure to provide requested verification information about the composition of her house-

hold, as required by the Department policy guidelines.[1] On September 19, 1985, petitioner and a legal representative appeared at a district food stamp office to reapply for food stamp eligibility. She listed herself and her three children as the household members who were requesting assistance and answered all other questions, except one, by checking a "yes" or a "no" box. In accordance with Department procedures, the food stamp worker interviewed petitioner and her representative. The worker testified before the Board that she "met with resistance on providing any information beyond that which was on the application." She further testified that she "had reason to believe that the information on the application form did not give a complete and accurate picture of the petitioner's true household living situation." The Department denied the benefits sought by petitioner and set forth the following reason in the denial notice:

> You did not provide all the required information (F.S.M. [Food Stamp Manual] § 373.2). I was not able to conduct the required interview with you in order to determine eligibility. You have not verified that your living situation is any different than in the past. (H.M.) is still a part of the household and his income and resources must be counted . . . .

At the fair hearing before the Board,[2] the food stamp worker testified that, based on the interview, "she could not establish that there had been any significant change since the previous applications," which the Department had denied for lack of verifying information.

The Board denied the application with the following statement:

---

[1] § 273.2(f)(2)(i) provides in relevant part:

  i. *Household Composition*
    State agencies shall verify factors affecting the composition of a household, if questionable. Individuals who wish to be a separate household from those with whom they reside shall be responsible for proving a claim that they are a separate household to the satisfaction of the State agency
    . . . .

[2] The Board has fair hearing appellate jurisdiction under 3 V.S.A. §§ 3090(b) and 3091.

The burden on the petitioner in this case was much more than merely filling out an application form and attending an interview. Because of her questionable and apparently contrived living situation, she was properly given the additional burden of verifying through third party sources to the satisfaction of the department the allegations she made regarding her household composition.

Fair hearing proceedings before the Board on the reduction of petitioner's fuel assistance grant paralleled the food stamp case. Petitioner mailed in her application for fuel assistance to the Department, indicating that she and her three children were the sole members of her household. She specifically declared that she did not share expenses with anyone. She gave the name of "H.M." as her wood dealer and listed his address, which was the same as her own.

In November 1985 the district director met with petitioner and her representative at an informal hearing. Petitioner indicated that she was the sole occupant of an addition to her trailer, which had formerly been occupied by H.M. The Department determined that she refused to answer questions regarding the whereabouts of H.M. After the district director further notified petitioner that her response was inadequate, petitioner requested a fair hearing. At the fair hearing, the district director testified that he had found that petitioner in fact shared her household with H.M. and that H.M. was not a member of her Aid to Needy Families with Children (ANFC) assistance group. The district director added that petitioner was subsequently asked by letter to provide additional information about her living arrangements[3] and she responded in writing that she did not know where H.M. lived but that he did not live in the addition to the trailer. The Department granted petitioner's fuel as-

---

[3] The verification requirement for the fuel assistance program is found in Welfare Assistance Manual (W.A.M.) § 2905(d), which provides:

When, in the judgement of the worker, any factor of eligibility is questionable the department has the right to require further substantiation or verification applicable to that factor and to deny assistance if refused. This procedure extends to considerations such as identity, location of the home, household composition, relationships, etc.

sistance application, but at a lower level which corresponded to her last verified household composition.

The Board affirmed the Department on both the food stamp and fuel assistance appeals, essentially on the grounds that petitioner failed to verify the facts concerning her living arrangements. The Board specifically found that petitioner's statement that she did not know the whereabouts of H.M.—her landlord, wood supplier, and close friend—was not credible. The Board emphasized that the petitioner failed to meet her burden of demonstrating initial eligibility for benefits.

## I.

Petitioner asserts that the Board lacked any basis for denying her applications for benefits.[4] She contends her application clearly indicated H.M. no longer lived in her household and attacks the Board's refusal to believe her on this issue. In effect, petitioner argues that once she stated affirmatively that H.M. did not share her household, the Department bore the burden to disprove what was essentially a prima facie showing.

Petitioner misapprehends the issue. The question is not whether her application shifted the burden to the Department concerning the facts asserted in it. Rather, the questions are: first, whether the Department could, within the bounds of its discretion, request verification of the facts it found questionable; and second, whether the Board could deny the applications for assistance based on petitioner's failure to provide verification of her household's composition. We answer both questions in the affirmative.

██ In addition to the written application, Department regulations condition one's entitlement to benefits on the information gained in a face-to-face interview and verification of the circumstances affecting eligibility. F.S.M. § 273.2(d)–(f). The Department shall verify factors affecting the composition of a household, if questionable, and can require the applicant to prove the composition of the household to the satisfaction of the

_____

[4] The parties agreed that evidence received regarding the food stamp denial would also constitute evidence in the fair hearing on petitioner's application for fuel assistance.

agency. F.S.M. § 273.2(f)(2)(i). The assessment of whether an applicant's household living arrangements are questionable, and if so, what shall constitute appropriate verification, are matters accorded to the discretion of the agency. This Court will not interfere with the performance of a discretionary duty in the absence of a showing of an abuse of discretion resulting in prejudice to one of the parties. *Vincent v. Vermont State Retirement Board*, 148 Vt. 531, 536, 536 A.2d 925, 929 (1987).

█ The Department terminated petitioner's food stamp eligibility in 1984 because she failed to provide requested verification concerning her household living arrangements. Petitioner refused to clarify her living arrangements in the face-to-face interview, preferring instead to stand on the written answers of her application. The fuel assistance application listed both petitioner and H.M., whom she described as her wood dealer, as residing at the same address. On this record, we cannot say that the Department abused its discretion by requiring petitioner to verify her description of her household, which the Department regarded as questionable. See *Smith v. Department of Human Services*, 498 A.2d 267, 268 (Me. 1985) (hearing officer's finding of lack of evidence to show good cause for failure of assistance recipient to file monthly report on time not clearly erroneous); *Vaughn v. Blum*, 92 A.D.2d 699, 460 N.Y.S.2d 398 (1983) (evidence sufficient to sustain finding by commissioner that recipient was not actively seeking employment; it was not unreasonable to require father to submit documentation of his efforts).

Petitioner essentially wants to disallow the requirement of verification of any information that would not be suspicious under a probable cause standard. Neither the state regulations nor any federal law cited by petitioner requires so stringent a test.

The Board ruled that the Department properly gave petitioner the additional burden of verifying her household composition through third-party sources because of petitioner's "questionable and apparently contrived living situation." In reaching this conclusion, the Board found that its denial of petitioner's 1984 food stamp application "put the petitioner on no-

tice that she would be required to prove to the satisfaction of the Department that she is a 'household separate from H.M.'"[5] Petitioner contends that the Board improperly considered this information and hence was left without any evidence showing her to be ineligible for benefits.

Specifically, petitioner argues that the Board violated 3 V.S.A. § 810(4) by taking official notice of the prior proceedings without providing her with the notice required, thereby removing the 1984 denial from any consideration by the Board.[6] We disagree. Under 3 V.S.A. § 816(a)(1), the Legislature specifically exempted the Board from the strictures of 3 V.S.A. § 810. Therefore, the Board properly referred to the disposition of the 1984 application in its evaluation of petitioner's application for fuel assistance and reapplication for food stamps.

The appeal raises concerns about the overall fairness of the procedures whose impact on petitioner's well-being and comfort are unquestioned. While the statutory exemption of the Board fully responds to petitioner's claim under § 810, we also note the propriety of the Board's reference to its 1984 decision, the limited use to which it put this information, and the ample notice and opportunity to respond provided to the petitioner.

"Administrative agencies, as a necessary adjunct to their quasi-judicial duties, have the authority to take official notice of judicially cognizable facts." *Carson v. Department of Employment Security*, 135 Vt. 312, 315, 376 A.2d 355, 358 (1977) (assessing the propriety of the official notice taken by an administrative board also exempted from § 810 under 3 V.S.A. § 816(a)(2)). A board's prior decision on related matters involving the same petitioner surely constitutes the kind of "evidence commonly relied upon by reasonably prudent men in the conduct of their own affairs." Fair Hearing Rule 11. When pre-

---

[5] The Board stated in its decision on the 1984 application that petitioner's explanation of her household composition "appears highly contrived." The Board also advised petitioner that she could reapply for benefits and at that time she would still have the right to present further evidence or verification to prove her claim.

[6] When a state agency seeks to take notice of a judicially cognizable fact, "[p]arties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise . . . and they shall be afforded an opportunity to contest the material so noticed." 3 V.S.A. § 810(4).

sented with applications for fuel and food stamp assistance, the Board could properly take notice of petitioner's prior attempts to explain her household's composition, explanations the Board characterized in 1984 as "highly contrived." See *In re Handy*, 144 Vt. 610, 613, 481 A.2d 1051, 1053 (1984) (Vermont Liquor Control Board could draw upon its own internal records in taking notice of its prior warnings to licensee).

The limited use of the information from the 1984 application did not compromise the fairness of the procedures accorded petitioner. The Board did not substitute its findings from an earlier hearing for a decision on the merits of the present applications, nor did the Board assume facts concerning petitioner's household had either changed or not changed. Rather, the Board used its knowledge of petitioner's past reluctance to verify her household's composition for the limited and proper purpose of evaluating the Department's justification of its request for verification in the present cases.

Petitioner also had adequate notice that her 1984 application and the reasons for its denial would play a part in her future requests for assistance. In its 1984 decision, the Board advised petitioner that she could reapply for benefits and, at that time, she would still have the right to present further evidence or verification to prove her claim. When petitioner subsequently reapplied for food stamps, her informal interviews with the Department continued to focus on the serious questions the Department had with her living arrangements. The Department's denial of the 1985 food stamp application informed petitioner that "[she] had not verified that [her] living arrangement was any different than in the past" and instructed her to refer to the previous fair hearing determination if she had any questions.

Pursuant to V.R.E. 201(e) as applied to a fair hearing, petitioner could have, upon receipt of the Board's order, requested the Board to hear further argument regarding the propriety of taking notice of the 1984 decision and of the facts so noticed. *Handy*, 144 Vt. at 614, 481 A.2d at 1053. Petitioner did not do so.

■ This Court will set aside the clearly erroneous findings of an administrative board, but where the record contains any

credible evidence to fairly and reasonably support the findings, the board's decision will stand. *In re Troyse*, 142 Vt. 612, 616, 460 A.2d 469, 471–72 (1983). The Board found that the notice provided in its 1984 decision, petitioner's questionable and apparently contrived living situation, and her failure to cooperate in resolving the issue in the face-to-face interview entitled the Department to require verification and to deny the applications when petitioner declined to provide it. These findings constitute credible evidence that supports the Board's decision. Therefore, the Board's denial of petitioner's eligibility for food stamps and fuel assistance must stand.

## II.

The balance of petitioner's arguments aver that the due process clause of the Fourteenth Amendment was violated since "appellant's case was decided based on extraneous issues which had little or nothing to do with her statutory entitlements to benefits," because she was given the burden of proving where H.M. lived, and because the Human Services Board was not vested with the discretion to override the caseworker who required petitioner to verify the information she supplied and who further determined that she had not complied with this request.

Parties must raise issues, including those with constitutional dimensions, at the earliest opportunity. Petitioner raised none of these arguments below, and we decline to consider them on appeal. See *In re Burlington Housing Authority*, 143 Vt. 80, 81–82, 463 A.2d 215, 217 (1983). Notably, all three issues concern the question of whether the verification requirement was reasonable and whether verification was fairly proffered. The record before us provides considerable assurance that the demand for verification was not peremptory or random, but was based on adequate and reliable information about petitioner. The Board, which also had before it the records in these matters, was fully empowered to disagree with the caseworker and with the Department if those records suggested that either had abused its discretion. In an age when administrative agencies play significant roles in the lives of many Vermonters, we are

watchful that the power implied in those roles is not abused. The wisdom of stressing household configuration in the determination of eligibility for these public assistance programs is beyond judicial scrutiny and is a matter committed to the Legislature. We are satisfied that, on these records, the Department had adequate grounds to seek verification and properly denied petitioner's applications when that verification was not forthcoming.

*Each appeal is affirmed.*