2006 VT 59

**In re Appeal of Kenneth HOUSTON**

[904 A.2d 1174]

No. 05-175

¶ 1. June 28, 2006. Claimant Kenneth Houston appeals from the Human Services Board's dismissal, without prejudice, of his appeal of a decision by the Department for Children and Families (DCF) to terminate his Long-Term-Care Medicaid benefits. DCF sent claimant notice that his benefits would be terminated as a result of the sale of his home and the transfer of the proceeds for less than fair market value. Claimant appealed to the Human Services Board, and DCF began requesting information for discovery purposes. Claimant opposed DCF's discovery requests on relevance grounds. Claimant also filed a motion to dismiss the action, alleging DCF's notice failed to state a valid basis for terminating his benefits. The hearing officer assigned to the appeal denied claimant's motion to dismiss and ordered him to provide the documents requested by DCF. When claimant refused to comply with this order, the hearing officer recommended that the Board dismiss his appeal. The Board dismissed claimant's appeal without prejudice. The Secretary of the Agency of Human Services approved the dismissal, and this appeal

followed. Claimant contends the Board erred by: (1) improperly dismissing claimant's appeal; (2) failing to rule on claimant's motion to dismiss termination of his benefits; and (3) failing to decide claimant's appeal on the merits. We hold that the Board was not required to consider claimant's motion to dismiss, but that it prematurely dismissed claimant's appeal, so we do not reach the issue of whether the Board was required to hold a hearing on the merits of claimant's appeal. We reverse in part and remand to the Board for further proceedings.

¶ 2. Claimant receives long-term care at the Woodridge Nursing Home in Barre, Vermont. Medicaid pays most of the cost of his nursing care. Under Medicaid, claimant's eligibility and his "patient share" — the share of nursing costs he must pay out of pocket — are determined by the amount of his financial resources. Medicaid Manual § M430, 5 Code of Vermont Rules 13 170 008-191. To prevent Vermont recipients of Medicaid benefits from hiding assets that would alter or eliminate their eligibility for benefits, DCF administers regulations prohibiting transfers of patient resources, with certain exceptions. Medicaid Manual § M440.2 & 3, 5 Code of Vermont Rules 13 170 008-201 & 202/204. Medicaid recipients DCF finds have improperly transferred resources are subject to having their benefits terminated for penalty periods defined by the regulations. Medicaid Manual § M440, 5 Code of Vermont Rules 13 170 008-201.

¶ 3. Claimant began receiving long-term-care benefits in November 2003, at which point, DCF set claimant's patient share at $1,515.59 per month, to be paid out of claimant's income. Between November 2003 and August 2004, claimant failed to pay his patient share to Woodridge. In August 2004, claimant sold his home. Claimant provided notice of the sale to DCF, and informed DCF that the net proceeds, $64,550, had been disposed

of through several transactions and should not affect his Medicaid eligibility. According to this notice, claimant used some of the proceeds of the sale to pay his overdue patient share, and he transferred additional funds to a revocable trust. Under the trust agreement, claimant's son and daughter were named trustees and claimant was the trust's beneficiary. Claimant's daughter, as trustee, loaned herself the entire amount of the trust principal, with her own home as security, in exchange for a promissory note, which required repayment over the course of seven years and seven months, primarily through a payment of $26,432.61 at the end of this period. DCF responded to claimant's notice on September 1, 2004, with a Notice of Decision reading:

> Long-Term Care Medicaid eligibility for Kenneth W. Houston ends 09-13-04 because of resource transfers of $11,242.24 for patient share payment to Woodridge and $26,432.61 for promissory note beyond life expectancy. The penalty period resulting from these two resource transfers begins 08-01-04 and ends 03-02-05. (M440, M440.4)

¶ 4. Claimant appealed DCF's decision through its fair hearing process, and he requested that his benefits continue during the process, which they did. In preparation for claimant's fair hearing, DCF sent a letter requesting documents containing information pertaining to the proceeds of the sale of claimant's home, and it subpoenaed claimant's bank records.[1] Claimant refused to turn over

certain of the requested documents and filed an objection with the hearing officer to DCF's request for information, arguing that the information sought by DCF was not relevant to his appeal. Claimant also filed a motion to dismiss DCF's termination of his benefits, arguing that as a matter of law, DCF's Notice of Decision did not contain sufficient grounds to merit termination.

¶ 5. On February 2, 2005, the hearing officer[2] issued an order: (1) granting DCF's requests to produce and ordering claimant to turn over the requested documents by February 11, 2005, warning claimant that "[f]ailure to provide this information will result in a recommendation that [DCF's] decision be affirmed based on [claimant's] failure to provide reasonable verification of his financial status"; (2) requiring DCF to "furnish [claimant] and the Board with a concise written explanation of all the factual and legal bases of the action it is taking" by February 18, 2005; (3) denying claimant's motion to dismiss; and (4) stating that a hearing would be held on the merits without further delay. DCF responded with a "Statement of Law and Facts"

---

[1] Claimant filed an unsuccessful action in superior court to quash the subpoena of his bank records; that action is not at issue in this appeal. Claimant also filed an action in federal district court challenging DCF's life expectancy calculation. In this Court, claimant filed a motion to supplement the record on appeal with a memorandum from DCF in which it alters its position regarding claimant's life expectancy. This motion is denied. As the appeal can be decided on the record before us, we need not consider supplemental evidence. *State v. Koveos*, 169 Vt. 62, 72 n.4, 732 A.2d 722, 729 n.4 (1999).

[2] A new hearing officer, Daniel Jerman, was assigned to the appeal during the course of the proceedings, replacing the original hearing officer, Shelley Simpson Jerman.

dated February 17, 2005, reiterating its view of the transfers leading to its decision to terminate claimant's benefits. Claimant did not respond to the February 2 order. Instead, he submitted a letter requesting appointment of a new hearing officer, citing the officer's lack of impartiality due to a pending action in federal district court.

¶ 6. On March 10, 2005, the hearing officer submitted a recommended decision to the Board, detailing the procedural history of the appeal and recommending that the Board dismiss the appeal based on claimant's refusal to comply with the February 2 discovery order. The Board, following oral argument regarding the hearing officer's recommended decision, issued a final decision on March 23, 2005, dismissing claimant's appeal without prejudice for failure to comply with the hearing officer's discovery order. The Board determined that while the hearing officer's order was subject to review, claimant was required to move for review of the order prior to February 11, instead of ignoring the order and challenging the relevance of the documents following the hearing officer's recommendation of dismissal. The Board noted that at oral argument claimant based his objection to the hearing officer's discovery order on the same relevance arguments rejected by the hearing officer, and stated that "the Board also rejects those arguments." The Board's order stated that if claimant "is willing to follow the directives of the hearing officer consistent with the Board's rules, he is free to refile his appeal in this matter. However, he shall not be entitled to continuing benefits pending any further consideration of this matter by the Board or its hearing officers." Claimant appealed the Board's decision to the Secretary of the Agency of Human Services. The Secretary approved the Board's decision, and this appeal followed.

¶ 7. Claimant contends the Board committed numerous errors in dismissing his appeal. In essence, he argues that the Board erred by: (1) dismissing his appeal as a sanction for discovery violations; (2) failing to rule on his motion to dismiss; and (3) failing to decide his appeal on the merits. While we presume the validity of certain agency actions, "adjudicatory functions of an administrative body are reviewed with special vigilance." *In re Vt. Verde Antique Int'l, Inc.,* 174 Vt. 208, 211, 811 A.2d 181, 183-84 (2002). We disagree with claimant's argument that the Board was required to rule on his motion to dismiss, but we agree with claimant that the Board improperly dismissed his appeal, so we need not reach his third argument regarding his entitlement to a hearing on the merits notwithstanding any procedural violations he may have committed.

¶ 8. Claimant's first several claims of error relate to the Board's dismissal of his appeal for discovery violations. Claimant argues that the Board lacked authority, under both its authorizing statute and its own regulations, to dismiss his appeal for any discovery violation, no matter how egregious. He also argues that even if the Board was authorized to dismiss his appeal for violating a discovery order, it was premature for the Board to dismiss his appeal under these circumstances because the hearing officer's order was not final. We agree with claimant that the Board's dismissal was improper, but only under the particular circumstances in this case. The Board possessed discretionary authority to use dismissal as a discovery sanction, but it abused its discretion by dismissing claimant's appeal in the absence of conduct demonstrating bad faith or willful disregard of a discovery order. The dismissal must therefore be reversed. See *Hall v. Dep't of Soc. Welfare,* 153 Vt. 479, 484, 572 A.2d 1342, 1345 (1990) (stating that an agency's discretionary decision

should be overturned when it is an abuse of discretion resulting in prejudice to a party).

¶ 9. We disagree with claimant that the Board lacked statutory or regulatory authority to compel discovery or punish discovery violations. An administrative body "has only such powers as are expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those granted." *Perry v. Med. Practice Bd.*, 169 Vt. 399, 403, 737 A.2d 900, 903 (1999) (quotations omitted). The Legislature granted the Board or "a hearing officer appointed by the board" power to conduct fair hearings, and enabled the Board to "adopt rules with reference to appeals, which shall not be inconsistent with this chapter" and which "shall provide for reasonable notice to parties, and an opportunity to be heard and be represented by counsel." 3 V.S.A. § 3091(b). The Board's explicitly delegated authority to conduct fair hearings would be meaningless without the incidental power to compel parties to provide relevant evidence.

¶ 10. Claimant argues that a fair hearing need not involve the collection of evidence because it is a "review de novo," which may be conducted based only on the evidence in DCF's possession at the time of its initial decision, and not a full evidentiary "hearing de novo." See *State v. Madison*, 163 Vt. 360, 370, 658 A.2d 536, 543 (1995) (stating that "the term 'review de novo' contemplates a nondeferential review that generally relies on, but is not restricted to, the record," while a "hearing de novo" contemplates "an entire trial") (quotations omitted); *In re Bushey-Combs*, 160 Vt. 326, 329, 628 A.2d 541, 543 (1993) (describing Board hearing as "review de novo"). This conclusion relies on a misinterpretation of the case law surrounding fair hearings. We have sometimes referred to fair hearings using the term "review de novo," but we have also explicitly stated that we used that expression "to describe a de novo hearing," and not "as a term of art." *Madison*, 163 Vt. at 369, 658 A.2d at 542 (explaining passing use of term "review de novo" in *In re Bushey-Combs* and describing Board fair hearings as "evidentiary"). The Board has the authority to conduct fair hearings based on evidence, and this necessarily implies the authority to compel the production of evidence.

¶ 11. The Board's regulatory authority to compel discovery is found in its fair hearing rules:

> Upon request a party shall promptly furnish an adverse party with copies of all documents and records that are relevant to the issues raised by the appeal. Disputes on the question of relevancy shall be resolved by the hearing officer in the first instance, subject to the board's review on the motion of either party.

Vermont Human Services Board, Fair Hearing Rule 11 (1995). There is no provision in either the statute or the fair hearing rules for dismissal of an appeal for failure to comply with an order following resolution of a relevance dispute. As the Board noted, however, Vermont Rule of Civil Procedure 37 allows dismissal when a party fails to comply with a discovery order. V.R.C.P. 37(b)(2)(C). While the rules of civil procedure are not applicable to administrative hearings, it was logical for the Board to consult Rule 37 in fashioning an appropriate sanction for a discovery violation in the absence of statutory or regulatory guidance, and it was reasonable for the Board to conclude from its examination of Rule 37 that it could use dismissal as a sanction. The Board could not reasonably have concluded, however, that dismissal is appro-

priate for every failure to comply with a discovery order. When a trial court invokes the sanction of dismissal under Rule 37, it must "indicate by findings of fact that there has been bad faith or deliberate and willful disregard for the court's orders, and further, that the party seeking the sanction has been prejudiced thereby." *John v. Med. Ctr. Hosp. of Vt., Inc.*, 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978); see also *Manosh v. First Mountain Vt., L.P.*, 2004 VT 122, ¶ 10, 177 Vt. 616, 869 A.2d 79 (mem.) (reversing default judgment issued as discovery sanction in the absence of findings showing bad faith, consideration of lesser sanction, and prejudice to opposing party); *C.C. Miller Corp. v. Ag Asset, Inc.*, 151 Vt. 604, 606, 563 A.2d 626, 627 (1989) (relying on *John* to reverse default judgment despite party's failure to respond to discovery request for approximately two years). In *John*, we held that absent such findings, "a less drastic sanction should be used," noting that "dismissal of an action because of a genuine inability to comply with a pretrial production order raises due process issues" under the federal Constitution. 136 Vt. at 519-20, 394 A.2d at 1135. While Rule 37's specific provisions are inapplicable in the context of a hearing before the Board, *John* stands for the principle that in the interest of avoiding due process violations, dismissal is inappropriate absent bad faith. This principle is just as applicable to administrative proceedings as it is to civil trials.

¶ 12. The conduct the Board's order describes did not merit dismissal of claimant's appeal. Following the hearing officer's February 2 order, there is little question claimant should have either turned over the documents at issue prior to the February 11 deadline, or else objected to the hearing officer's determination of the documents' relevance prior to that deadline. Instead, claimant waited until the hearing officer recommended a decision to the Board to challenge the hearing officer's resolution of the question of relevance. Although, as claimant points out, neither the hearing officer's February 2 order nor the Board's fair hearing rules specify that motions for review of a hearing officer's finding of relevance must be made prior to the hearing officer's recommended decision, the Board may be correct that the objection was untimely. Nevertheless, claimant committed only a minor transgression by objecting after the hearing officer's recommended decision instead of after his initial discovery order.

¶ 13. The Board had ample opportunity to review the hearing officer's decision despite the timing of claimant's objection. After the hearing officer issued his recommended decision, claimant objected in writing, and the Board heard oral argument regarding the hearing officer's discovery order. According to the order dismissing claimant's appeal, during oral argument, claimant "essentially reiterated the same 'relevancy' arguments previously submitted and implicitly rejected by the hearing officer in his February 2 rulings." Upon hearing these arguments, the Board may well have been justified in finding that the challenged documents were relevant and rejecting claimant's objection. The Board's order, however, fails to establish the relevance of the documents requested by DCF, or even to list the requested documents. The order characterizes claimant's untimely objection to the hearing officer's order as a choice to ignore it, and it relies on this choice to justify dismissing claimant's appeal. The Board is statutorily required to "issue written findings of fact" or adopt the hearing officer's written findings only after a hearing on the merits of an appeal. 3 V.S.A. § 3091(c). Here, however, prior to dismissing claimant's appeal, the Board should have made written findings establishing either the relevance of the

challenged documents or claimant's bad faith and willful disregard of the hearing officer's order. Without such findings, the Board's order gives the appearance that the Board dismissed claimant's appeal solely on the basis of his untimely objection to the hearing officer's discovery order. This was not a sufficient reason to deny claimant a fair hearing on the merits of the termination of his benefits. See *John*, 136 Vt. at 519, 394 A.2d at 1135 ("The imposition of the dismissal sanction cannot be imposed merely as punishment for failure to comply with the court's order.").

¶ 14. If claimant had objected prior to the hearing officer's February 11 deadline, the Board would have heard his objection and made a decision regarding relevance. If claimant then continued to withhold the documents, the Board might then have been justified in dismissing the appeal. Even in that instance, dismissal would be only one of several available sanctions, see V.R.C.P. 37(b)(2)(A)-(D) (listing potential sanctions, including adverse inference regarding the subject matter of the discovery order, refusal to allow "designated claims or defenses," striking out of specific pleadings, and contempt), and depending on the nature of claimant's continued refusal, a "less drastic sanction" may have been more appropriate. *John*, 136 Vt. at 520, 394 A.2d at 1135. The only difference between that scenario and the facts of this case is that claimant arguably filed his objection late. If the Board saw claimant's untimely objection, or some other conduct, as evidence of bad faith and willful disregard, it should have expressed that view in its order, and if it insisted on dismissal as a sanction for that bad faith, it should have explained why a lesser sanction was inappropriate. See *Manosh*, 2004 VT 122, ¶ 10 (taking into account whether the court considered discovery sanctions other than dismissal or default judgment). It was an

abuse of discretion for the Board to dismiss claimant's appeal without establishing the relevance of the challenged documents or explaining its choice of sanction. We must therefore reverse the dismissal and remand claimant's appeal to the Board for further proceedings.

¶ 15. Our dissenting colleagues disagree that additional findings were necessary prior to dismissal of claimant's appeal, relying primarily on two assertions: (1) that *John* is inapplicable because the Board's dismissal was without prejudice; and (2) that the Board did not need to make additional findings under *John* because the key factual issues are undisputed. There is little significance to the distinction between a dismissal without prejudice and a dismissal with prejudice under these circumstances. The effect of the Board's dismissal was to terminate payment of claimant's benefits pending appeal, putting him at some risk of eviction from his nursing facility. Moreover, if claimant were somehow unable to produce the documents in question, the dismissal would be indistinguishable from a dismissal with prejudice. Whatever the actual consequences, the potential consequences for claimant were severe enough to merit requiring the Board to make findings of bad faith or willful disregard.

¶ 16. We acknowledge that claimant's conduct would likely have supported such findings. The history of claimant's appeal gives the impression that claimant was uncooperative and confrontational in every aspect of the process, and his failure to timely respond to the hearing officer's determination that the requested documents were relevant is only one example of his intransigence. It also seems likely that a sanction short of dismissal may have been insufficient. This is immaterial, however, because the Board failed to include findings to this effect in its order. Any conclusions distinguishing claimant's conduct from ordinary, good

faith pursuit of an objection — albeit an untimely objection — are absent, and can be found only by reviewing the broader record on appeal.

¶ 17. The purpose of the findings required by *John* is to protect against arbitrary dismissals that may violate principles of due process. Such requirements can always be characterized as time-consuming and burdensome, especially when the litigant alleging a procedural violation does not seem particularly deserving of protection. The *John* rule strikes a balance between efficiency and procedural fairness by allowing dismissals, but requiring them to be supported by findings of bad faith or willful disregard. The rule does not contain an exception covering "self-evident" bad faith or willful disregard, and we will not create one here.

¶ 18. As a final matter, claimant contends the Board erred by failing to rule on his motion to dismiss DCF's termination of his benefits. The Board's fair hearing rules state in relevant part: "Motions to dismiss . . . may be submitted for the board's consideration prior to the time the case in chief is submitted. The board shall dispose of outstanding motions before proceeding to rule on the merits." Fair Hearing Rule 9. Claimant's "motion to dismiss" challenged DCF's basis for terminating his benefits as a matter of law. The only disposition made with respect to this motion was a single line in the hearing officer's February 2 order stating that claimant's motion was denied. While the fair hearing rules allow only the Board, and not its hearing officers, to consider motions to dismiss, claimant's motion was not a conventional motion to dismiss. Instead, it essentially asked for summary reversal of DCF's initial determination. The Board was within its discretion to ignore claimant's motion and consider his substantive legal arguments along with the merits of the appeal.

*Reversed and remanded to the Human Services Board for further proceedings consistent with the views expressed herein.*

¶ 19. **Burgess, J.,** concurring in part, dissenting in part. After claimant's wilful and unjustified refusal to produce discovery as ordered, it was no abuse of discretion for the Board to dismiss his appeal without prejudice, allowing claimant to proceed on the condition that he comply with discovery. Accordingly, I respectfully dissent from the remand and the majority's reasons for it. As the majority concludes, *ante,* ¶ 9, the Board was authorized to compel discovery of relevant evidence through its hearing officer, and had the incidental power necessary to enforce its authority. Claimant did not contest the discovery order, but ignored it without any offered or apparent excuse. The Board responded appropriately by imposing the relatively mild sanction of dismissal with leave to refile if claimant produced the information sought.

¶ 20. That claimant disagreed with the ordered discovery of certain financial information is undisputed. Claimant complained to the Department in October 2004 that, while willing to disclose some of the information requested, he would not produce documentation about the value of his daughter's home put up as her mortgage collateral for the borrowed trust fund, because he deemed it irrelevant. On October 25, 2004, claimant moved in superior court to quash the State's subpoena for the information, but his motion was denied upon the court's finding that the information sought appeared discoverable and relevant. Claimant's similar objection was rejected by the Board's hearing officer when the February 2, 2005, discovery order was issued requiring claimant to disclose the information to the Department by February 11, three weeks in advance of the hearing set for March 4.

¶ 21. Having failed to persuade the superior court and the hearing officer that the information was irrelevant, claimant then unilaterally elected not to comply with the discovery order. This is not disputed. Claimant made no motion for Board review of the order as provided by the Board's Fair Hearing Rule 11. See *ante*, ¶ 11. The due date passed without disclosure and ten days later, on February 22, the Department filed a "Statement" with the Board that claimant failed to disclose the material as directed. Claimant did not dispute this either, or offer any response at all to the Board before the scheduled hearing date. Instead, in a letter dated February 28, four days before the scheduled hearing, claimant moved to disqualify the hearing officer, not on any grounds of bias or conflict of interest, but merely because claimant named the hearing officer as a defendant in an Amended Complaint and Motion for Temporary Restraining Order against enforcement of the discovery order, filed by claimant in federal court three weeks earlier. This motion was baseless on its face.[3] Claimant's request

for the temporary restraining order, his third challenge to the requested ·discovery, was denied by the federal court. Nevertheless, claimant continued in his refusal to comply with the discovery order.

¶ 22. On March 2, 2005, the Board cancelled the merits hearing, and on March 10, the hearing officer submitted a recommendation that claimant's appeal be dismissed for failure to comply with discovery. This did prompt a response from claimant, but not to the issue of his discovery noncompliance. Claimant protested that he had disclosed some information earlier in October, and that some of the other information originally withheld was later supplied pursuant to the earlier subpoena; all beside the point of the discovery order to produce information that had *not* yet been disclosed. As to the remaining undisclosed information about prior encumbrances on the daughter's realty used as security for the mortgage loan of the trust money, claimant offered, apparently for the first time, that all such encumbrances were a matter of public record and available at the local town offices; again beside the point that claimant was ordered to produce the material to opposing counsel three weeks before the hearing. The Board answered this recalcitrance with the simple expedient of dismissing claimant's appeal, but without prejudice, until such time as he chose to comply with his discovery obligation.

¶ 23. The majority mistakenly balks at the Board's dismissal because of the Board's omission to make "findings of . . . bad faith or deliberate and willful disregard for the court's orders, and . . . that the party seeking the sanction has been

---

[3] In support of his request, claimant cited Fair Hearing Rule 3, which requires the hearing officer to be "not involved in any way with the action in question," but the "action in question" before the Board was the Department's termination of benefits. Claimant alleged no involvement in that action by the hearing officer. Nowhere in the motion, or in its referenced federal court complaint, is there any claim of bias or prejudice necessary to overcome a judge's presumed impartiality. *Ball v. Melsur Corp.*, 161 Vt. 35, 39-40, 633 A.2d 705, 710 (1993). It is settled that litigants cannot recuse judges just by naming them in lawsuits. *In re Hunter*, 167 Vt. 219, 223, 704 A.2d 1154, 1156 (1997). Otherwise, parties would be free to employ

collateral litigation to manipulate the courts and judge shop, *In re Illuzzi*, 164 Vt. 623, 624, 670 A.2d 1264, 1265 (1995) (mem.), just as claimant attempted here.

prejudiced thereby," see *ante*, ¶ 11 (quotations omitted), as necessary to invoke the "ultimate sanction" in response to analogous discovery violations in civil litigation; all as prescribed in *John v. Medical Center Hospital of Vermont, Inc.*, 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978); *Manosh v. First Mountain Vermont, L.P.*, 2004 VT 122, ¶ 10, 177 Vt. 616, 869 A.2d 79 (mem.); and *C.C. Miller Corp. v. Ag Asset, Inc.*, 151 Vt. 604, 606, 563 A.2d 626, 627 (1989). In each of those cases, we reversed the imposition of an "ultimate" sanction (dismissal with prejudice in *John*, and default judgments in *Manosh* and *C.C. Miller Corp.*) and remanded for such findings necessary to justify such a punitive final judgment against the noncompliant party. In each of those cases we also cautioned that, absent the prescribed findings, "less drastic" sanctions should be used. *John*, 136 Vt. at 520, 394 A.2d at 1135; *Manosh*, 2004 VT 122, ¶ 10; and *C.C. Miller Corp.*, 151 Vt. at 607, 563 A.2d at 627.

¶ 24. The rule of these cases, then, is readily distinguishable from and inapposite to the Board's ruling in the instant case. The Board's dismissal here, *without prejudice*, imposed no "ultimate sanction." In stark contrast to the final judgments entered against the noncompliant parties in *John*, *Manosh*, and *C.C. Miller Corp.*, the Board's dismissal order left claimant free to renew his appeal if he complied with the discovery order. The Board's dismissal without prejudice was the "less drastic sanction" prescribed in *John*, *Manosh*, and *C.C. Miller Corp.*, designed for no other evident purpose than to insure compliance with the discovery order as a precondition to claimant choosing to pursue his appeal.

¶ 25. Although the majority is dissatisfied with the Board's lack of findings to establish claimant's bad faith or willful disregard of the discovery order, *ante*, ¶¶ 11-14, it is undisputed that his noncompliance with the order was willful.

Claimant never suggested that production was beyond his means. In his written response to the hearing officer's dismissal recommendation, claimant acknowledged the order and identified the documents required, but not produced. In his brief before this Court, claimant concedes awareness of the order and argues, without authority, that his unsuccessful effort to enjoin the order was somehow a substitute for filing an objection with the Board. Claimant's disdain for the order did not justify its violation. It is beyond cavil that claimant's noncompliance was deliberate and unexcused. To the extent any finding of bad faith is necessary to warrant the Board's less than "ultimate sanction," which required only that claimant abide by an unchallenged discovery order before proceeding with his appeal, claimant's bad faith is self-evident from his admitted refusal to follow the order, absent injunction, justification, or even a timely objection; all frosted by his patently unfounded recusal motion.

¶ 26. The majority also faults the Board for not fully explaining why the undisclosed information was relevant, *ante*, ¶ 13, but such a finding was unnecessary to the Board's order of dismissal without prejudice.[4] Claimant offered no

---

[4] The majority's concern seems to pass by the Board's explanation that claimant's irrelevancy argument was rejected for stated reasons specifically emphasizing "the limited information" initially provided by claimant about the transfer of resources to his daughter and the resulting rights and obligation of the Department to obtain proof of financial eligibility under sections M102, M126, and M131 of the Medicaid regulations. Medicaid Manual §§ M102, M126, & M131, 5 Code of Vermont Rules 13 170 008-8.1, -30, & -34. These rules require

challenge to the discovery order until the hearing officer's dismissal recommendation. Having declined to make any timely objection to the Board before discovery was due, claimant's relevancy argument did not have to be resolved by the Board for discovery purposes.

¶ 27. In any event, the relevance of prior encumbrances upon the daughter's collateral was manifest. As noted by the Board, termination of claimant's benefits was premised on the Department's contention that he transferred $37,000 in resources for less than fair market value. As recited by the majority, this transfer involved claimant moving his assets into a trust fund which the daughter then borrowed, in return for a mortgage secured by her home. It is commonly understood that encumbrances on realty affect equity and are thus obviously relevant, without the need for particular findings, to the issue of fair mortgage value of the home exchanged by the daughter for the trust's funds.

¶ 28. The majority accurately observes that the Board had ample opportunity to address claimant's arguments after the discovery date and after the hearing

---

claimant to "give necessary facts about their (or their family's) situation for the eligibility tests," Medicaid Manual § M102, 5 Code of Vermont Rules 13 170 008-8.1, and to supply "[v]erification ... [of] [a]ll resources," Medicaid Manual § M126, 5 Code of Vermont Rules 13 170 008-30. The rules also direct the Department to investigate and review claimant's continuing eligibility after reporting a "change in his situation that is related to the Medicaid eligibility tests," Medicaid Manual § M131, 5 Code of Vermont Rules 13 170 008-34, such as a reported transfer of assets to a trust fund borrowed by a daughter in return for a low interest, low payment mortgage secured by real estate equity of undisclosed value.

date, *ante*, ¶ 13, but there will always be unlimited opportunities to entertain such belated challenges if parties can delay trial by ignoring discovery deadlines, filing unfounded recusal motions and merely seeking, but not obtaining, injunctive relief from other forums. The Board, however, like any trial court, had a docket to administer according to its rules that claimant chose to ignore, resulting in this typically vexing discovery dispute that wastes time and unnecessarily distracts from the actual adjudication of cases. While the majority is generous to tolerate claimant's noncompliance, nothing in the record appears to make his flouting of the discovery order any more precious than the Board's interest in proceeding to merits. The Board's dismissal order, permitting claimant to pursue his appeal should he comply with discovery, was quite proportionate to the problem and worked no ultimate prejudice to claimant's interests in his appeal.

¶ 29. I would, however, reverse the part of the Board's dismissal order foreclosing continued benefits after claimant refiles his appeal since that part of the order appears primarily punitive and unnecessary to effectuate progress on the case.

¶ 30. I am authorized to state that Judge Cook joins in this dissent.