2010 VT 96

## In re R.P. and B.P.

[14 A.3d 278]

No. 09-421

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed October 29, 2010

*Oliver Cleary* and *Robert P. Keiner* of *Law Office of Robert P. Keiner*, Middlebury, for Petitioners-Appellees.

*William H. Sorrell*, Attorney General, and *Bridget C. Asay* and *Jody Racht*, Assistant Attorneys General, Montpelier, for Respondent-Appellant.

¶ 1. **Skoglund, J.** The Department for Children and Families (DCF) appeals from the Human Services Board's reversal of its determination that petitioners should be included in the child protection registry for placing their children at risk of harm. At issue is whether a hearing officer erred in ordering DCF to file a written offer of proof prior to the completion of the fair hearing, and whether the Board erred in reversing DCF's registry decision based on DCF's failure to comply with the hearing officer's directive. We reverse and remand for additional proceedings.

¶ 2. Petitioners have four young daughters. A DCF investigation indicated that for over eighteen months petitioners had allowed E.W., an adult male who had multiple convictions for sexual offenses against children, to have regular contact with their children. E.W. maxed out his sentence in 2008 and did not complete any sex offender treatment programs. Based on its investigation, DCF notified petitioners in February 2009 that it intended to include them in the child protection registry for putting their children at risk of being sexually abused. See generally 33 V.S.A. §§ 4915-4916 (DCF must investigate reports of child abuse and neglect and maintain a record of all investigations that have resulted in a "substantiated report"). Petitioners sought an administrative review of DCF's decision. In April 2009, following a conference with petitioners and their attorney, the reviewer upheld DCF's substantiation.[1]

---

[1] A substantiated report is one that is "based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." 33 V.S.A. § 4912(10). An "abused or neglected child" includes a child "whose physical health, psychological growth and development or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent." *Id.* § 4912(2). "Risk of harm" means a "significant danger that a child will

¶ 3. In a letter to petitioners, the reviewer recounted the following information. Petitioners learned of E.W.'s sex offender history in March 2008 when E.W. was arrested for failing to register as a sex offender. Petitioners also knew that E.W. had a history of drug abuse and that he had stolen items from another family in the past. Following E.W.'s release from jail, petitioners continued to allow him to have contact with their children. This contact was at times unsupervised. They also had, at times, allowed E.W. to sleep in their home. Even after DCF investigators advised petitioners in greater detail about E.W.'s criminal history, petitioners continued to believe that their children were not at risk.

¶ 4. Petitioners described a set of rules that they had put into place regarding contact between the children and E.W. Petitioners claimed that, in the year and a half that E.W. had been involved with their family, nothing had happened to the children. They argued that this supported their position that the children could have contact with E.W. and remain safe. The reviewer found this position of significant concern. Even with the precautions that petitioners described, there had been at least one incident where petitioners' twelve-year-old daughter was alone in a vehicle with E.W. in petitioners' driveway when neither petitioner was home. The reviewer found this particularly troubling, given that this daughter was of similar age and gender as one of E.W.'s prior victims.

¶ 5. Given the circumstances described in the investigation report, E.W.'s sexual offense history, the absence of any documented sex offender therapy, the ages and gender of the four children, as well as the fact that petitioners were informed about the risks he posed to children, the reviewer concluded that a reasonable person would believe that petitioners placed the children at significant risk of sexual abuse. The reviewer thus upheld DCF's decision to substantiate the report. In reaching her conclusion, the reviewer relied on the statutory definitions of "risk of

suffer serious harm other than by accidental means, which harm would be likely to cause physical injury, neglect, emotional maltreatment or sexual abuse." *Id.* § 4912(4).

We note that the laws governing the registry process have changed since DCF substantiated petitioners here. See 2007, No. 168 (Adj. Sess.). We apply the law in effect as of DCF's substantiation decision, and all statutory references are to such laws, unless otherwise noted. See generally 2007, No. 77.

harm" and "substantiated report." She also cited a DCF policy that further defined when children were at risk of harm from sexual abuse.[2] Petitioners appealed from the reviewer's decision to the Human Services Board.

¶ 6. A two-day hearing was scheduled for July 2009. Mother B.P. testified first as a hostile witness. She reiterated that the children had frequent contact with E.W. She stated that the children played games with E.W., and that E.W. stayed in petitioners' home in December 2008 for six nights. E.W. also camped in the backyard for a short time in May 2008. Petitioners and their children ate meals with E.W. four or five times per week, saw him at church, and went on occasional shopping trips with him. B.P. described a set of rules, discussed with E.W. and the children, that she believed would ensure the children's safety.

¶ 7. Following a break in the hearing, the hearing officer stated his belief that DCF would have difficulty establishing the facts necessary to meet its burden of proof. He suggested that the evidence thus far reflected only that petitioners were naive in their relationship with E.W. and that their conduct was motivated by their personal and religious views. Following an off-the-record discussion, the hearing officer ordered DCF to file an "offer of proof" to show that petitioners' actions constituted "risk of harm." The offer of proof was to be in the form of affidavits, except for the offers of proof concerning the testimony of petitioners and their children. The hearing officer indicated that, following DCF's

---

[2] According to the reviewer, this policy requires the evaluation of the following factors to determine if a child is at "substantial risk of sexual abuse":

the alleged perpetrator's history of sexual abuse or offenses, the nature of the abuse or offense and the history of treatment; the nature, frequency and duration of the alleged perpetrator's access to children; the extent to which the alleged perpetrator's use of alcohol or other substance increases risk to the child or children; and the willingness and ability of the children's caretaker(s) to protect them from risk of harm.

In this category, the perpetrator is considered to be the person whose behavior or history poses a risk to the child. However, the caretaker of the child may also be a substantiated perpetrator of risk of sexual abuse if through his or her acts or omissions, the caretaker knowingly places the child at substantial risk of sexual abuse.

Vermont Dep't for Children & Families, Family Services Div., Family Services Policy Manual, Policy No. 56.

submission, he would notify the parties if any further proceedings were necessary. DCF objected to this order, arguing that the proposed procedure was at odds with the fair-hearing statute, but it agreed to produce the offer of proof by September 11, 2009.

¶ 8. Several days before this deadline, however, DCF filed a motion asking the Board to enforce its rules and to allow DCF to present additional evidence. DCF did not include sworn affidavits in its motion as directed by the hearing officer, but rather provided a "factual summary." DCF again challenged the hearing officer's procedural approach, arguing that the directive to provide a written proffer was unfair and unsupported by the Board's rules. DCF also requested an extension of the deadline within which to file an offer of proof to some point after a decision was made with respect to its request to hold an evidentiary hearing. If the Board ordered it to submit an offer of proof, DCF requested sufficient time in which to comply. Petitioners opposed DCF's motion.

¶ 9. In September 2009, the hearing officer made written recommendations to the Board. He found it undisputed that petitioners had knowingly allowed a convicted child sexual abuser to have contact with their children over an extended period of time. He also found it undisputed that the children had not suffered any actual harm from their contact with E.W. and that petitioners eventually ceased all contact when DCF demanded it. The hearing officer then recounted the procedural history of the appeal, including his belief that DCF would have a difficult time proving that petitioners were anything more than naive, that their conduct was motivated by anything other than their personal and religious views, or that petitioners would pose a future risk to their children or to other children. He also noted that DCF failed to comply with his directive to provide an offer of proof.

¶ 10. Concerning his demand for an offer of proof, the hearing officer found his actions justified by the Board's rules. Even if they were not, he found such authority implied because it was reasonably necessary to ensure the fair and efficient functioning of the Board. As to the appropriate relief, the hearing officer stated that, if the Board agreed that no offer of proof was required, then the case should be remanded to the hearing officer to go forward with the hearing without the offer. If, however, the Board upheld the hearing officer's authority to require an offer of proof, the Board should then determine whether "relief" was appropriate for

the petitioners given DCF's failure to comply with the order, or whether the matter should be remanded to the hearing officer for any further proceedings. DCF filed written objections to the hearing officer's recommendations.

¶ 11. In an October 2009 decision, the Board essentially adopted the hearing officer's recommendations. It found that DCF had not complied with the offer of proof directive by the time of the proceedings before the Board. The Board thus concluded that DCF failed to identify evidence to meet its burden of proof, which the Board characterized as "a showing that the petitioners were guilty of conduct more serious than naivety, misjudgment, and lack of cynicism." The Board then reversed the underlying substantiation decision. Citing Fair Hearing Rule 1000.4K, the Board also stated in a footnote that if DCF "chooses to seek any further relief from the Board in this matter, the Board's consideration of any such request will be *preconditioned* on the Department furnishing the petitioners and the Board with the written proffers of evidence as directed by the hearing officer." This appeal by DCF followed.

■ ¶ 12. DCF challenges the hearing officer's authority to demand an offer of proof, and the Board's decision to reverse its underlying determination. We agree that the Board's decision must be reversed, but on other grounds. The Board here was considering an interlocutory appeal of an evidentiary ruling. See F.H. Rule 1000.3(L) (A "hearing officer may submit any ruling on a motion to the Board prior to holding a hearing on the merits if it is likely to expedite the final resolution of the appeal."). As recounted above, the hearing officer, on his own motion, ordered DCF to identify sufficient evidence to support a prima facie case before the proceedings would go forward. DCF challenged this ruling, and the Board upheld the hearing officer's authority to require such a showing. It should have then remanded the case to the hearing officer with direction to DCF that it must comply with the order. The hearing officer had not yet made any findings of fact, nor explicitly evaluated the facts under the appropriate legal standard. See 3 V.S.A. § 3091(c) (Board or hearing officer must "issue written findings of fact," and Board must "enter its order based on the findings"). Indeed, the Board implicitly recognized the likelihood that the proceedings would continue below when it preconditioned further relief on DCF's filing of an offer of proof. DCF was entitled to the opportunity to comply with the Board's

order, and the Board acted prematurely in reversing DCF's substantiation decision under the circumstances here.

¶ 13. In reaching our conclusion, we necessarily reject DCF's challenge to the hearing officer's authority to demand an offer of proof. While this is not a power expressly conferred on the hearing officer or the Board by the Legislature, it is necessarily implied to enable the Board to carry out its sole statutory function — conducting fair hearings — effectively and efficiently. See 3 V.S.A. § 3091(b); *In re Houston*, 2006 VT 59, ¶ 9, 180 Vt. 535, 904 A.2d 1174 (mem.) (explaining that Board has those powers "expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or neces- sarily implied as are necessary to the full exercise of those granted" (quotation omitted)). The exercise of such authority is also consistent with the Board's rules. See F.H. Rule 1000.3(D) (A hearing officer may hold status conferences "to determine factual, legal, and procedural issues" or "to consider any other matter that may aid the disposition of the appeal."). We note, moreover, that DCF has complied with such orders in other registry cases, including one currently before us on appeal.

¶ 14. We thus conclude that while the Board properly upheld the hearing officer's preliminary evidentiary ruling, it erred in reversing DCF's decision to substantiate petitioners for placing their children at risk of harm. We reverse and remand for additional proceedings.

*Reversed and remanded.*