*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-311

MARCH TERM, 2011

| | |
|---|---|
| In re Edmund Bills | } APPEALED FROM: |
| | } |
| | } |
| | } Human Services Board |
| | } |
| | } |
| | } FAIR HEARING NO. T-04/09-209 |

In the above-entitled cause, the Clerk will enter:

Petitioner Edmund Bills appeals the Human Services Board's denial of his application for the Choices for Care (CFC) Program. Following a hearing, the Board concluded that petitioner does not meet the clinical eligibility criteria for either the highest needs or the high needs group. Petitioner argues that the Board: (1) ignored credible evidence and made findings unsupported by the evidence, (2) incorrectly applied the eligibility criteria, and (3) impermissibly considered whether petitioner required care in a nursing home. We reverse and remand.

Petitioner is seventy-nine and is diagnosed with schizophrenia and chronic kidney disease. He was hospitalized in December 2008 with acute urinary blockage and kidney failure. Upon discharge, he was admitted to the Vermont Veterans Home's skilled nursing unit for rehabilitative care. He applied for CFC to help pay for his care. CFC is a state-administered Medicaid waiver program that "provides long-term care services to elderly or physically disabled Vermont adults." Choices for Care; 1115 Long-Term Care Medicaid Waiver Regulations § I(A), 4 Code of Vt. Rules 13 110 008-1, available at http://www.michie.com/vermont [hereinafter CFC Regulations]. The goal of the program is to give individuals "equal access to either nursing facility care or home and community-based services, consistent with their choice." Id. To qualify for the program, an individual must meet clinical eligibility requirements, which are administered by the Department of Disabilities, Aging and Independent Living (DAIL).

DAIL regulations set forth several ways to qualify for benefits. Petitioner claims he meets the criteria for the highest needs group in two ways. First, petitioner argues that he requires "extensive or total assistance with at least one of the following Activities of Daily Living (ADLs): toilet use; eating; bed mobility; or transfer, and require[s] at least limited assistance with any other ADL." CFC Regulations § IV(B)(1)(b)(i), at 13 110 008-3. Petitioner asserts that the evidence demonstrates that he needs extensive assistance with toileting and at least limited assistance with bathing. Second, petitioner argues that he has "a moderate impairment with decision-making skills" and a behavioral symptom—wandering—that is frequent and not easily altered. Id. § IV(B)(1)(b)(ii), at 13 110 008-3. In the alternative, petitioner argues that he meets the high needs eligibility group criteria because he requires extensive assistance on a daily basis with bathing. Id. § IV(B)(2)(b)(i), at 13 110 008-4.

On February 4, 2009, DAIL's Long Term Care Clinical Coordinator (LTCCC) completed a clinical assessment of petitioner and determined that he required limited assistance with toileting and extensive assistance with bathing. The LTCCC also determined that petitioner wanders on a daily basis, but could be redirected. Based on this assessment, the Department denied his application.

Petitioner appealed to the Human Services Board. Petitioner's case was heard before a hearing officer. At the hearing, petitioner presented testimony from his primary care physician, and two nurses who work at the Veteran's Home. One nurse is the coordinator of the Minimum Data Set (MDS) program, which the Veteran's Home uses to assess the needs of patients for purposes unrelated to this appeal. The MDS nurse coordinator testified that the MDS assessment revealed that petitioner requires extensive assistance with toileting and at least limited assistance with bathing. Following the testimony of petitioner's physician and the MDS nurse coordinator, petitioner called one of his treating nurses. Apparently, at this point the hearing officer sought to terminate the hearing, petitioner objected, and there was an off-the-record discussion. Petitioner represents on appeal that during this discussion the hearing officer directed DAIL to submit its case through exhibits and affidavits. The transcript indicates only that after the discussion the hearing officer explained he was "ready to find the facts as to the petitioner's condition and needs as had been testified to by the prior two witnesses," but nonetheless allowed petitioner to proceed with his remaining witness. While petitioner complains that the hearing officer "prematurely terminated the hearing," given that the witness was permitted to testify, we consider this testimony as admitted and part of the record on appeal.

The hearing officer determined that petitioner's main physical problems are his needs for urinary catheterization and monitoring for risk of renal infection. The hearing officer found that petitioner needs daily assistance in switching his catheter bag to his other leg, and in regular monitoring of his urine flow. The hearing officer noted that "petitioner's mental illness makes him incapable of monitoring and reporting his physical condition and . . . resistant to people touching him." He found, however, that petitioner does not require daily skilled nursing care, and instead his daily needs were mostly for monitoring and cueing that "could be performed by a trained caregiver outside of a skilled nursing facility, with medical overview." In addition, the hearing officer found that petitioner's behavioral issues, such as wandering, were easily handled through redirection. The hearing officer concluded that petitioner did not meet the eligibility requirements for CFC because he did not require extensive to total assistance on a daily basis for at least one activity of daily living. According to the hearing officer, "the need for cueing, verbal assistance, and verbal behavioral redirection, even if required on a daily basis" did not meet the regulatory definition. Therefore, the hearing officer recommended denial of petitioner's request. Petitioner filed objections with the Human Services Board. The Board heard oral argument, but ultimately adopted the hearing officer's recommendation.

On appeal, petitioner first argues that the evidence does not support the Board's denial of his application. "This Court will set aside the clearly erroneous findings of an administrative board, but where the record contains any credible evidence to fairly and reasonably support the findings, the board's decision will stand." Hall v. Dep't of Soc. Welfare, 153 Vt. 479, 486-87 (1990). With limited exception, the rules of evidence apply to hearings before the Board. See Fair Hearing Rules, § 1000.3(O)(5), 4 Code of Vt. Rules 13 020 002-2 to -3, available at http://www.michie.com/vermont. Evidence must, however, be admitted at the hearing before it can be relied upon. 3 V.S.A. § 809(g); see In re Twenty-Four Vt. Utils., 159 Vt. 339, 349-50 (1992) (explaining that although rules of evidence are relaxed, administrative board's decision must rely on evidence actually admitted).

2

Our review of the Board's decision in this case is complicated by the difficulty of determining what evidence was actually admitted before the hearing officer. The transcript of the hearing indicates that petitioner's two physician reports (petitioner's exhibits thirteen and nineteen) were admitted following the testimony of petitioner's physician. While other documents were discussed at the hearing, no other exhibits were admitted at the hearing through petitioner's witnesses. DAIL did not present any witnesses. The parties filed memoranda following the hearing. Petitioner's filing indicates that DAIL entered two exhibits: the Choices for Care Clinical Assessment and the MDS assessment. DAIL's memorandum indicates that at the close of the hearing, the hearing officer agreed to allow DAIL to supplement the record with a memo with affidavits and/or exhibits. While this may be, no affidavit is attached to DAIL's filing, nor is there a list of the exhibits that DAIL requested to admit. To further complicate matters, the record received from the Human Services Board indicates that DAIL admitted four exhibits at the hearing, including the LTCCC's evaluation and the MDS evaluation. This difficulty is not resolved by the hearing officer's decision, which does not explain what exhibits were admitted, either by stipulation or otherwise, and notes simply that the findings "are based on testimony and documents submitted at a hearing in this matter held on January 19, 2010." Given this lack of clarity, we limit our review of the Board's findings to the testimony of petitioner's three witnesses and petitioner's two exhibits that were actually admitted at the hearing.

We turn, then, to petitioner's first argument that the Board's finding that he does not meet the highest needs eligibility group because he does not need extensive assistance with toileting is not supported by the evidence. Petitioner asserts that the testimony of his witnesses to the contrary is unchallenged. His primary care physician testified that although petitioner does not need weight-bearing assistance for toileting, he is unable to manage his catheter by himself because he cannot identify complications, such as possible infections or insufficient urine flow. In addition, a nurse at the Veteran's Home testified that petitioner needs extensive assistance with the management of his catheter, including checking whether: it is working; the urine is free of blood; it is correctly positioned and the input matches the output. Similarly, one of petitioner's treating nurses testified that petitioner is unable to evaluate whether something is wrong with his urine.

As noted, DAIL did not call any witnesses at the hearing. On cross-examination, petitioner's nurse concurred that the monitoring and assistance petitioner required for care of his catheter did not require/ skilled nursing care, but could be performed by a nursing assistant. She also testified that petitioner can independently ambulate to the toilet, clean himself, and adjust his clothing. The Board found that petitioner's daily needs did not qualify as extensive assistance because, while he needs help monitoring his catheter and assistance switching the catheter bag each day, he is otherwise physically able to empty his catheter with some verbal cueing. The Board's findings do not explain why the monitoring function and daily physical assistance of moving petitioner's catheter bag from one leg to the other does not qualify as extensive assistance. On appeal, DAIL argues that it was within the Board's discretion to conclude that this level of needed care is insufficient to be "extensive" assistance, citing the definition for extensive assistance provided on the LTCCC form. Because this form is not part of the record on appeal and DAIL presented no witness to explain the definition, we decline to rely on it. Without more detailed findings from the Board on what evidence was used to reach its decision and the basis for denying petitioner eligibility, we are unable to affirm the Board's findings. Therefore this question is remanded to the Board for further findings. See Sec'y, Agency of Natural Res. v. Irish, 169 Vt. 407, 415-16 (1999) (remanding where court's findings were incomplete).

Petitioner also argues that the evidence does not support the Board's finding that he does not meet the highest needs eligibility because of his impaired decisionmaking and behavioral symptoms. In support, petitioner's doctor testified that the impairment of his decisionmaking was moderate and that he was paranoid and wandered. The Board found that "petitioner's mental illness makes him incapable of monitoring and reporting his physical condition, and makes him dismorphic [sic] and resistant to people touching him," but concluded that his resulting behaviors were easily altered. This finding is supported by the testimony of petitioner's nurses that his wandering could be verbally redirected. Therefore there is evidence to support the Board's finding that although petitioner's decisionmaking is impaired and he wanders, this specific behavior can be easily altered. Denial of eligibility on this basis is affirmed.

Next, we address petitioner's argument that he meets the eligibility criteria for the high needs group, which requires that an individual need "extensive to total assistance on a daily basis with at least one [activity of daily living, including bathing]." CFC Regulations § IV(B)(2)(b)(i). The Board did not address petitioner's bathing requirements in its decision, except to note that he can wash himself, but needs daily reminding to ensure proper hygiene. On appeal, DAIL argues that petitioner does not meet the criteria because he does not require bathing every day and therefore the assistance is not required on a daily basis. Because this argument was not evaluated by the Board and the factual issue remains unresolved, we reverse and remand for consideration of whether petitioner meets the criteria for the high needs group. See In re M.G., 2010 VT 101, ¶ 15, ___ Vt. ___ (reversing and remanding for additional proceedings where board failed to make necessary findings to support its conclusion).

Finally, petitioner argues that the Board erred as a matter of law by impermissibly considering whether petitioner could receive his care outside of a nursing home. Petitioner construes the Board's observation that "petitioner's medical and functional needs can be met, at least hypothetically, in a setting other than a nursing home," as demonstrating that the Board denied his application simply because it thought he should not be in a nursing home instead of based on an evaluation of the criteria in the regulations. Because we remand for further consideration of petitioner's eligibility for the highest and high needs group, any error in considering alternative placement for petitioner was harmless.

Reversed and remanded.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

4