2003 VT 101

**In re Helen POTTER**

[838 A.2d 105]

No. 03-227

¶ 1. October 29, 2003. Petitioner Helen Potter appeals from the Human Services Board's denial of her applications for seasonal fuel assistance, crisis fuel benefits, and essential person benefits. She argues that the Board erred in concluding that she was a roomer in her nephew's home, rather than the head of the household, and erred in concluding that she was obligated to provide financial information about her nephew to determine her eligibility for essential person benefits. We affirm.

¶ 2. Ms. Potter is eighty-eight years old. She has lived with her nephew, Reginald Benjamin, in his home since 1999. Ms. Potter's sole source of income is $624 per month from Social Security

and Supplemental Security Income. In February 2002, with the assistance of an attorney, Ms. Potter and Mr. Benjamin entered into a "lease and employment" agreement. The agreement provided that Ms. Potter would lease Mr. Benjamin's six-bedroom home for $400 per month plus the cost of all utilities, including heat. According to the agreement, Mr. Benjamin would continue to live in the home and Ms. Potter would pay him $600 per month, later reduced to $224 per month, to care for her.

¶ 3. Ms. Potter granted Mr. Benjamin power of attorney in 2001. His name is on her bank accounts and he withdraws the money that she owes him from these accounts. Mr. Benjamin acknowledged that Ms. Potter has insufficient funds to pay for her expenses, such as food and medical bills, in addition to her obligations under the lease agreement. He stated that he often pays her expenses himself.

¶ 4. In August 2002, Mr. Benjamin filed an application for fuel assistance on Ms. Potter's behalf with the Department of Prevention, Assistance, Transition and Health Access. In the application, Mr. Benjamin stated that Ms. Potter rented his home and was responsible for the entire heating bill. Mr. Benjamin described himself as Ms. Potter's caregiver. The Department concluded that Ms. Potter was not entitled to seasonal fuel assistance as a "head of household," but was instead entitled to a $50 cash benefit as a "roomer" in Mr. Benjamin's household. The Department considered Ms. Potter a roomer because Mr. Benjamin, who owned the home, lived there full-time. The Department also noted that Mr. Benjamin had previously represented himself as the live-in owner of the home to obtain weatherization benefits. Ms. Potter appealed this decision to the Human Services Board.

¶ 5. Mr. Benjamin also filed an application for crisis fuel benefits on Ms. Potter's behalf. The Department rejected this request as well, finding Ms. Potter ineligible for assistance because she had not used her assets — specifically, a Vermont home that she had transferred to her nephew as a gift — to prevent a home heating crisis. The Department pointed out that, had Ms. Potter not appealed her status as a roomer, it would have denied her application on this basis as well, because roomers are ineligible for crisis fuel benefits. Ms. Potter also appealed this decision to the Human Services Board.

¶ 6. Finally, Mr. Benjamin filed an application on Ms. Potter's behalf for essential person benefits. He listed himself as Ms. Potter's "essential person." In the application, Mr. Benjamin stated that he owned a farm as well as the home in which the parties resided. He indicated that he paid $17,000 in property tax and paid for the cost of maintaining his vehicles. He refused, however, to provide any additional information about his assets despite the Department's repeated requests. The Department warned Ms. Potter that it could not determine eligibility for essential person benefits without this information, and it eventually denied the application on this basis. Ms. Potter appealed this decision to the Human Services Board as well.

¶ 7. In January 2003, the Human Services Board consolidated and heard Ms. Potter's appeals, and it affirmed the denial of her applications. The Board agreed that Ms. Potter was a roomer in Mr. Benjamin's household and, as such, she was not entitled to seasonal fuel assistance or crisis fuel benefits. The Board concluded that the parties' purported lease agreement had no effect on Ms. Potter's status as a roomer because it was a "sham" designed solely to gain fuel assistance. The Board found it implausible that Ms. Potter would be financially responsible for the rent and all of the expenses of a six-bedroom home, even though Mr. Benjamin was the owner and long-time occupant of the home. The

Board also found it unlikely that the fair market rental value of the home was $400 per month. It pointed out that, in any event, Ms. Potter had no real right to occupy the premises because Mr. Benjamin had a right to live in the home under the lease, and he could end the "lease" at any time with thirty days notice. Thus, the Board concluded that Ms. Potter was a roomer and was ineligible for seasonal fuel assistance or crisis fuel benefits. In reaching its conclusion, the Board noted that, even if it were to consider Ms. Potter the head of the household, which it did not, Mr. Benjamin's income would have to be included in determining her eligibility for fuel assistance.

¶ 8. The Board also affirmed the denial of Ms. Potter's request for essential person benefits. The Board concluded that the Department had properly denied her application because she had refused to provide information about Mr. Benjamin's income and resources. This appeal followed.

¶ 9. Ms. Potter first argues that the Board erred in concluding that she was a roomer. She argues that her lease and employment agreement with Mr. Benjamin clearly established that she was renting his entire home, not a specific room within it. She asserts that she and Mr. Benjamin were entitled to set the lease terms as they saw fit, and the Board's findings are inadequate to support its conclusion. She further argues that, as the head of the household, her applications should have been granted without considering Mr. Benjamin's assets or income because he was providing her with medically necessary personal care.

¶ 10. We reject these arguments because the record amply supports the Board's conclusion that Ms. Potter was a roomer in Mr. Benjamin's household. See *Hall v. Dep't of Social Welfare*, 153 Vt. 479, 486-87, 572 A.2d 1342, 1346 (1990) (We will not set aside the Board's findings unless they are clearly erroneous; we will uphold the Board's decision if the record contains any credible evidence that fairly and reasonably supports its findings.). Under the Department's rules, a "roomer" is someone who pays rent "for exclusive occupation of one or more rooms as separate living quarters within the head of household's living unit." Fuel Program § 2901.1(5), 5 Code of Vermont Rules 13 170 006-7 (2000). A roomer is not entitled to seasonal fuel assistance because he does not have a fuel account separate from the head of the household. Instead, a roomer is eligible for an annual $50.00 cash benefit. Fuel Program § 2906(d), 5 Code of Vermont Rules 13 170 006-20 (2000). A head of household, on the other hand, is eligible for seasonal assistance because he is financially responsible for the cost of occupying the living unit. Fuel Program § 2901.1(3), 5 Code of Vermont Rules 13 170 006-6 (2000); Fuel Program § 2901.2 (3)(a)(1), 5 Code of Vermont Rules 13 170 006-9 (2000).

¶ 11. The Board's conclusion that Ms. Potter was a roomer rather than a head of household is supported by the evidence. As the Board pointed out, it would be illogical for Ms. Potter, whose monthly income is $624, to rent a six-bedroom home for $400 and pay Mr. Benjamin the remaining $224 of her income for caretaking services, and still claim responsibility for paying the cost of utilities for the living unit. She clearly has no financial ability to perform the terms of this lease agreement. Additionally, as the Board found, Mr. Benjamin owns the home in which the parties reside and has been living there for a substantial amount of time. Under these circumstances, the Board properly rejected the purported agreement between the parties as a sham designed solely to circumvent eligibility requirements. As the Board found, the parties' living situation is properly characterized as "an elderly woman who lives in a room in her nephew's home for which she pays him

rent." The Board's findings adequately support its conclusion that Ms. Potter was a roomer, and as such, was ineligible for seasonal and crisis fuel assistance.

¶ 12. Ms. Potter next argues that the Board improperly denied her request for essential person benefits. She asserts that she did not need to provide information about Mr. Benjamin's assets because her application should have been considered based on her income and assets alone. Ms. Potter misreads the Department's rules.

¶ 13. The Vermont Aid to the Aged, Blind or Disabled (AABD) program provides cash payments to any aged, blind, or disabled person who has a needy "essential person" living in their home. Aid to the Aged, Blind or Disabled § 2750, 5 Code of Vermont Rules 13 170 002-25 (1996). An "essential person" is generally someone who lives with and provides medically necessary personal care or homemaker services to an aged, blind, or disabled person. Aid to the Aged, Blind or Disabled §§ 2750-2751.2, 5 Code of Vermont Rules 13 170 002-25-27 (1996). In determining whether an applicant is entitled to assistance, the Department considers the income and resources of an applicant's "assistance group." Aid to the Aged, Blind or Disabled § 2752, 5 Code of Vermont Rules 13 170 002-30 (1996). Those who must provide income and resource information include the aged, blind, or disabled person and that person's spouse or "non-spouse essential person." *Id.*

¶ 14. In this case, Ms. Potter designated Mr. Benjamin as her "non-spouse essential person." Consequently, she was obligated to provide information about his income and resources to establish her eligibility for benefits. See Aid to the Aged, Blind or Disabled § 2750, 5 Code of Vermont Rules 13 170 002-25 (1996). Although Ms. Potter provided information about her own finances, she refused to provide information about Mr. Benjamin's, despite the Department's repeated

requests that she verify his income and resources. The Department must act within thirty days, and it may deny an application when an applicant refuses to provide necessary information. See Aid to the Aged, Blind or Disabled § 2712.1, 5 Code of Vermont Rules 13 170 002-5 (1996) (When an applicant fails to do her part in the eligibility investigation process, such as failing to give necessary information or proofs asked for, her application may be denied if a decision cannot be made within the time limit); see also Aid to the Aged, Blind or Disabled § 2712.2, 5 Code of Vermont Rules 13 170 002-6 (1996); Aid to the Aged, Blind or Disabled § 2712.4, 5 Code of Vermont Rules 13 170 002-7 (1996) (requiring proof of all income and resources). In this case, the Board properly denied Ms. Potter's application because she refused to provide information about Mr. Benjamin's income and resources.

*Affirmed.*

Motion for reargument denied January 8, 2004.