2004 VT 70

**Christina JACOBUS, Lindsey Turgeon and Megan Woods v. DEPARTMENT OF PATH**

[857 A.2d 785]

No. 03-220

¶ 1. July 29, 2004. In these consolidated cases, petitioners Lindsey Turgeon and Megan Woods appeal the Secretary of Human Services' (Secretary) denial of their request for coverage of interceptive orthodontic treatment under Medicaid's Early and Periodic Screening, Diagnosis, and Treatment (EPSDT) program.[1] Originally, the Human Services Board granted coverage on grounds that, although petitioners do not meet the

---

[1] After this appeal was filed, PATH agreed to provide coverage to petitioner Christina Jacobus and, therefore, her appeal is moot.

State's listed criteria for medically necessary orthodontic treatment, they have at least the same medical need for treatment as children whose conditions are on the list. The Secretary rejected certain of the board's factual findings and reversed its decision. Because the Secretary's order violates federal law, we reverse.

¶ 2. At the time of the proceedings below, petitioners were nine-year-old Medicaid eligible girls. Megan had persistent pain in her teeth, particularly when eating. Lindsey had chronic pain in her jaw and speech difficulties. The girls' family dentists referred them for orthodontic treatment and they saw the same orthodontist, Dr. Fred Salvatoriello. Dr. Salvatoriello diagnosed various multiple malocclusions in each girl and recommended interceptive orthodontic treatment in each case.

¶ 3. The Department of Prevention, Assistance, Transition and Health Access (PATH) denied petitioners request for Medicaid coverage on grounds that interceptive treatment was not "medically necessary" for either child. PATH regulations provide two means by which treatment can qualify as medically necessary. Under the first method, PATH requires that a child have either one major or two minor malocclusions, which are defined according to diagnostic criteria established by PATH's dental consultants. Medicaid Manual § M622.4, 5 Code of Vermont Rules 13 170 008-233 (2001).[2] In Megan's case, she met the

criteria for one minor condition (blocked cuspids) but fell just below the criteria for two others (anterior open bite and crowding per arch). In Lindsey's case, none of her four diagnosed malocclusions (blocked cuspids, anterior open bite, anterior crossbite and crowding) met the listed criteria. Alternatively, PATH also provides for coverage of orthodontic treatment "if otherwise necessary under EPSDT found at M100." *Id.* It is undisputed that PATH did not review either girl's condition to determine whether treatment was "otherwise necessary."

¶ 4. In consolidated appeals to the board, petitioners argued that by limiting interceptive orthodontic coverage to the exact conditions described in the listed criteria, without conducting an individualized review of each child's medical need, PATH violated its own regulations as well as federal statutes and regulations governing the EPSDT program. Petitioners further argued that the State's denial of coverage violated their right to equal treatment under the Vermont and federal constitutions. After a de novo fair hearing, the board approved coverage under the individualized review prong of the state regulations, holding that each child's condition was at least as

*Major Criteria*: Cleft palate, Severe skeletal Class III, Posterior crossbite (3+ teeth), Other severe cranio-facial anomaly;

*Minor Criteria*: Impacted cuspid, 2 Blocked cuspids per arch (deficient by at least 1/3 of needed space), 3 Congenitally missing teeth per arch (excluding third molars), Anterior open bite 3 or more teeth (4+ mm), Crowding per arch (10+ mm), Anterior crossbite (3+ teeth), Traumatic deep bite impinging on palate, Overjet 10+ mm (measured from labial to labial).

---

[2] PATH applies separate criteria for interceptive and comprehensive orthodontic treatment. According to the board's findings, interceptive treatment "prevents a developing malocclusion due to harmful habits," while comprehensive treatment targets "a malocclusion which already exists." The criteria for interceptive treatment are:

severe in terms of functional compromise as conditions preapproved by the State for coverage.

¶ 5. On review pursuant to 3 V.S.A. § 3091(h)(2), the Secretary overturned the board's decision. First, the Secretary reversed without explanation the board's findings that each girl's multiple malocclusions, considered cumulatively, were at least as severe as any listed conditions. Second, the Secretary held that "even assuming for argument's sake that they did have such an 'equivalent' condition to those described in our criteria," that is not enough. Instead, the Secretary held that state regulations require coverage of orthodontic treatment only where a child has a "handicapping malocclusion." Petitioners timely appealed the Secretary's order to this Court pursuant to 3 V.S.A. § 3091(h)(3).

¶ 6. Petitioners first challenge the Secretary's rejection of board findings thirty-nine and forty-six, which determined that the net effect of each child's combined dental impairments was at least as severe "in terms of functional compromise" (Lindsey), or "in terms of present functioning" (Megan) as the conditions listed by the State.

¶ 7. The Secretary may reverse or modify factual findings in a board decision only if "the board's findings of fact lack *any* support in the record." 3 V.S.A. § 3091(h)(1)(A) (emphasis added). This is identical to the clearly erroneous standard that this Court applies when reviewing the board's findings of fact. See, e.g., *In re Potter*, 2003 VT 101, ¶ 10, 176 Vt. 574, 838 A.2d 105 (mem.). The Secretary, therefore, must uphold the board's findings "if the record contains any credible evidence that fairly and reasonably supports its findings." *Id.* (citing *Hall v. Dep't of Social Welfare*, 153 Vt. 479, 486-87, 572 A.2d 1342, 1346 (1990)).

¶ 8. The record here provides ample evidence to support these findings. In Megan's case (finding forty-six), Dr. Salvatoriello provided written testimony that Megan had three malocclusions: 2 blocked cuspids, which met the minor criteria; crowding which met the criteria in her upper arch and was barely below the criteria in her lower arch; and an anterior open bite, which measured below the State's criteria. Dr. Salvatoriello testified that these conditions are interrelated, that in combination they are at least as serious as any two of the State's minor criteria, and that if left untreated there was "a virtual certainty that full orthodontic treatment will be necessary" including extraction of permanent teeth.

¶ 9. In Lindsey's case (finding thirty-nine), Dr. Salvatoriello testified that although all four of her malocclusions fell below the State's minor criteria, there was no medically significant difference between Lindsey's anterior openbite and anterior crossbite and the State's criteria for those conditions; that the combined effect of her impairments was at least as serious as having a condition that met any two of the State's minor criteria; and that orthodontic treatment was necessary to correct current conditions and to prevent the malocclusions from worsening into a significantly greater and more expensive problem that could possibly require corrective maxillofacial surgery.

¶ 10. Although the State contends that Dr. Salvatoriello's testimony is not credible, our review of the record reveals it to be credible and reasonable. The State's primary argument appears to be that findings thirty-nine and forty-six are inconsistent with the board's simultaneous findings that neither Lindsey nor Megan have a current or likely functional deficit. We see no inconsistency. As PATH admitted and as the board also found, "ninety percent of children who meet [the State's criteria] do not actually have 'handicapping malocclusions.'" Rather, the State's criteria were "purpose-

fully drawn at a low level of impediment for the safety of the children."

¶ 11. Similarly, we agree with the board that Dr. Salvatoriello's testimony regarding the severity of the girls' cumulative conditions was uncontroverted. The State's dental consultant, Dr. Kevin Risko, never personally examined either girl, nor did he analyze the cumulative impact of their multiple malocclusions. Rather, he contended only that the girls did not meet the criteria and that "the Department's criteria must be given deference." Simply reapplying the listed criteria is not an individualized review. Nothing in Dr. Risko's testimony counters the weight of Dr. Salvatoriello's testimony on the issue of cumulative impact. Therefore, pursuant to 3 V.S.A. § 3091(h)(1)(A), findings thirty-nine and forty-six must be reinstated.

¶ 12. Petitioners also argue that the Secretary wrongly rejected board finding number nine, that PATH's written regulations do not contain the definition of "severe malocclusion" offered by the Department's experts. Given our conclusion below, we do not reach this issue.

¶ 13. Petitioners next challenge the Secretary's conclusion that the board's decision erroneously interpreted PATH's Medicaid regulations. See 3 V.S.A. § 3091(h)(1)(B) (Secretary may modify or reverse a board decision if it "implicates the validity or applicability of any agency policy or rule"). The board determined that § M622.4 established a de facto level of medical severity for EPSDT coverage of orthodontic treatment, and that any child with conditions of equal or greater severity qualified for coverage. The Secretary disagreed, holding that PATH developed its criteria and designed its orthodontics program solely "to identify and treat serious handicapping malocclusions — those malocclusions that carry with them real functional deficit." Thus, he concluded treatment is "medically necessary" under § M622.4 only if

the child meets the State's criteria or has a "real functional deficit."

¶ 14. The parties spend much of their time on appeal disputing whether the Secretary's interpretation of § M622.4 complies with the minimum federal treatment standard. See 42 U.S.C. § 1396d(r)(3)(B) (EPSDT dental services "shall at a minimum include relief of pain and infections, restoration of teeth, and maintenance of dental health"). We decline to reach this question since, even assuming, arguendo, that the Secretary's definition of the treatment standard is valid, we conclude that the State is in violation of the Medicaid Act's comparability provisions as described below.

¶ 15. State participation in the federal Medicaid program is optional. But once a state elects to participate, in return for federal dollars it must comply with federal statutory and regulatory requirements. *Cushion v. Dep't of PATH*, 174 Vt. 475, 477, 807 A.2d 425, 428 (2002) (mem.). Under 1989 amendments to the Medicaid Act, dental screening and treatment for children under the age of twenty-one is mandatory. See 42 U.S.C. § 1396d(r)(3) (setting minimum dental screening and treatment requirements); *id.* § 1396d(r)(5) (requiring "other necessary health care, diagnostic services, treatment, and other measures ... to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan").

¶ 16. As with all Medicaid services, states "may place appropriate limits on [EPSDT services] based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d); see also H.R. Rep. No. 101-247 at 398-400 (1989), reprinted in 1989 U.S.C.C.A.N. 1906, 2125 ("While States may use prior authorization and other utilization controls to ensure that treatment services are medically necessary, these controls

must be consistent with the preventive thrust of the EPSDT benefit."). However, standards for determining eligibility for and extent of EPSDT medical assistance "shall be comparable for all groups." 42 U.S.C. § 1396a(a)(17). Furthermore, "medical assistance made available to any individual . . . shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual." 42 U.S.C. § 1396a(a)(10)(B)(i). See also 42 C.F.R. § 440.240(b) (state Medicaid plans "must provide that the services available to any individual in [qualified] groups are equal in amount, duration, and scope for all recipients within the group"); 42 C.F.R. § 440.230(c) ("The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service . . . solely because of the diagnosis, type of illness, or condition.").

¶ 17. Here, PATH's regulations provide for orthodontic treatment for EPSDT-eligible children in two situations: (1) if the patient's conditions meet the listed criteria for either interceptive or comprehensive treatment, or (2) if PATH determines, upon individualized review, that treatment is "otherwise necessary under EPSDT at M100." Medicaid Manual § M622.4, 5 Code of Vermont Rules 13 170 008-233. The definition of EPSDT at § M100 is simply a quotation of the federal statutory standard at 42 U.S.C. § 1396d(r)(5) that states provide "[s]uch other necessary health care . . . to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the [EPSDT] screening services, whether or not such services are covered under the State [Medicaid] plan." Medicaid Manual § M100, 5 Code of Vermont Rules 13 170 008-4-5 (1999).

¶ 18. The Secretary's order would establish two quite different standards for each of these provisions. Under the first prong of § M622.4, anyone who meets the

criteria on the State's published interceptive or comprehensive authorization forms would be preapproved for coverage. As the Secretary stated in his order, the standard of severity established by the criteria is lenient: "Of necessity, in trying to identify those with truly handicapping malocclusions, the treatment of whom is required under federal law/EPSDT, the diagnostic criteria used by the Department also sweep in children who may have less severe problems." In contrast, under the second prong of § M622.4, the Secretary would allow coverage only if the applicant has a "handicapping malocclusion" — which his order defined as "those malocclusions that carry with them real functional deficit." This is a far stricter standard. As we noted above, PATH's own dental consultants estimate that ninety percent of children who are approved under the criteria for orthodontic treatment do not actually have "handicapping malocclusions." The Secretary's order, therefore, violates federal Medicaid requirements. See *Simpson v. Wilson*, 480 F. Supp. 97, 103 (D. Vt. 1979) (denial of coverage based on etiology, where applicant had equal medical need as persons with covered conditions, violates Medicaid Act's prohibition against denying or reducing service "solely because of diagnosis, type of illness, or condition"); cf. *Cushion*, 174 Vt. at 478, 807 A.2d at 428-29 (State may not deny Medicaid coverage based on type of treatment required where applicant has "at least as great" a need as persons whose treatment is covered).

¶ 19. The State attempts to evade the comparability problem by arguing that the criteria do not discriminate by condition, but rather represent a consensus determination by a committee of some of the State's leading orthodontists as to when interceptive treatment is "medically necessary." See 42 C.F.R. § 440.230(d) (authorizing states to limit services by

medical necessity). This argument, however, merely verifies that the State has established separate and unequal standards of medical necessity. Vermont's EPSDT orthodontic program offers both comprehensive treatment, which is defined as treatment of "a malocclusion which already exists," and interceptive treatment, which is defined as prevention of "a developing malocclusion due to harmful habits." Thus, under the Secretary's medically necessary treatment standard — a "real functional deficit" — interceptive (i.e. preventative) orthodontic treatment is never medically necessary. The State's dental committee, in contrast, has defined certain conditions where preventative care is considered medically necessary. Once the State offers interceptive orthodontic treatment in some cases, it must do so equitably and may not discriminate by "diagnosis, type of illness, or condition." 42 C.F.R. § 440.230(c). See also *Cushion*, 174 Vt. at 477, 807 A.2d at 428 (even optional Medicaid services must comply with applicable Medicaid statutes and regulations). Thus, the State must also cover preventative orthodontic treatment where it is of equal or greater severity as conditions covered by the State's criteria.

¶ 20. The State also defends its criteria on grounds that a "line must be drawn at some point to identify when treatment is medically necessary for a particular condition." The criteria used here, the State contends, are based on factors related to medical necessity — such as the number of teeth affected and the degree of crowding or bite problems — and directly correlate to the degree of severity of the malocclusion. Thus, the State argues, its criteria do not discriminate by condition. Rather, petitioners are disqualified "because their conditions are not severe enough to meet the criteria."

¶ 21. The assessment of medical need for treatment of a given condition, however, cannot be limited to a predefined list of criteria. As the Secretary concedes, "under both the clear language of PATH's own regulation and under the federal Medicaid Act" petitioners are entitled to individualized review of their specific conditions. See *Chappell v. Bradley*, 834 F. Supp. 1030, 1035 (N.D. Ill. 1993) (clarified by 1993 WL 496700 (N.D. Ill. 1993)) (determination of medical need for ·EPSDT-mandated orthodontic treatment cannot be made by use of index alone, but requires "exercise of professional judgment of an orthodontist"); see also 42 U.S.C. § 1396a(a)(19) (standards limiting Medicaid services must be applied "in a manner consistent with simplicity of administration and the best interests of the recipients"); S. Rep. No. 404, at 24 (1965), reprinted in 1965 U.S.C.C.A.N. 1943, 1965 (Medicaid Act "specifically prohibits the Federal Government from exercising supervision or control over the practice of medicine, the manner in which medical services are provided, and the administration or operation of medical facilities"); *id.* at 46, 1965 U.S.C.C.A.N. at 1986 ("the physician is to be the key figure in determining utilization of health services" under Medicaid Act).

¶ 22. Here, PATH did not provide petitioners with an individualized review as required by the Medicaid Act or its own regulations. See Medicaid Manual § M622.4, 5 Code of Vermont Rules 13 170 008-233 (treatment required if found to be "otherwise necessary"); see also *id.* § M107, 5 Code of Vermont Rule 13 170 008-21 ("Additionally, for EPSDT-eligible beneficiaries, medically necessary includes a determination that a service is needed to achieve proper growth and development or prevent the onset or worsening of a health condition."). Nor did PATH offer any evidence at the fair hearing to rebut the professional opinion of petitioners' treating orthodontist that petitioners' conditions were at least as severe as conditions covered by the

State's criteria. Rather, PATH's dental consultant simply reasserted that petitioners did not meet the State's criteria, and that the "State's criteria must be given deference." Reapplying individual criteria, without any analysis of cumulative impact, is not a consideration of all the factors relevant to a patient's condition. Thus, the State is without any evidentiary support and cannot argue now that petitioners' conditions were not severe enough to warrant treatment.

¶ 23. Generally, we grant deference to the Secretary, as the head of the Department of PATH, regarding interpretations of the department's governing statutes and regulations, and will not disturb the Secretary's interpretations absent a compelling indication of error. *In re Cent. Vermont Med. Ctr.*, 174 Vt. 607, 608, 816 A.2d 531, 535 (2002) (mem.). The Court does not defer, however, to the Secretary's interpretation of federal law and regulations. See *Brisson v. Dep't of Social Welfare*, 167 Vt. 148, 152, 702 A.2d 405, 408 (1997). In this case, the Secretary's interpretation of § M622.4 would violate federal Medicaid statutes and regulations and, therefore, is error.

¶ 24. Because we must construe state statutes or regulations in a way that complies with federal law, *Cushion*, 174 Vt. at 479, 807 A.2d at 430, we hold that PATH must provide EPSDT Medicaid coverage of interceptive orthodontic treatment whenever an eligible beneficiary's conditions meet the State's listed diagnostic treatment criteria or when the evidence shows they have conditions of equal or greater severity. The evidence here showed that petitioners' medical need for treatment was "at least as severe" as persons with conditions that are preapproved by the State for Medicaid coverage. Therefore, PATH must provide them coverage.

*Reversed.*