2007 VT 100

### In re Appeal of Carol D'ANTONIO

[939 A.2d 493]

No. 06-153

¶ 1. September 5, 2007. This appeal concerns a Human Services Board order requiring the Office of Vermont Health Access to provide petitioner Carol D'Antonio with Medicaid transportation reimbursement for out-of-state medical appointments for her disabled son. Petitioner argues that the Secretary of Human Services, who remanded the Board's decision for further findings, had no legal basis for disturbing the Board's order, and further asserts that the Secretary does not have authority to remand Medicaid decisions back to the Board. On cross-appeal, the Office claims that the Secretary has the statutory power to remand Board decisions and that the Board erred in declining to reconsider its decision in accordance with the Secretary's remand and the Office's motion for reconsideration. We reverse the Secretary's decision remanding petitioner's case, but conclude that the Secretary may remand Board decisions when appropriate.

¶ 2. Petitioner's twelve-year-old son, J.D., has a number of severe medical problems including autism, auto-immune disease, dietary issues, and developmental delays. Twice a year, J.D. travels to out-of-state specialists — a pediatric psychiatrist specializing in autism in Maryland and a pediatrician specializing in auto-immune disease in New York — for treatment. For seven consecutive years, Medicaid paid for transportation to the out-of-state physicians twice yearly, based on a referral form filed by J.D.'s Vermont primary-care physician. Despite this history, the Office denied Medicaid transportation funding for J.D.'s appointments with the out-of-state specialists in

November 2004 and March 2005. Nonetheless, petitioner took her son to the scheduled appointments and sought reimbursement from Medicaid for the transportation costs. In support of her request for reimbursement, petitioner filed two letters with the Office attesting to the medical necessity and lack of local availability of the treatment J.D. receives from the out-of-state doctors — one from his local primary-care physician and one from his out-of-state pediatric psychiatrist.

¶ 3. In June 2005, the Office agreed to pay transportation and lodging expenses for J.D.'s November 2004 appointments because its local transportation agent failed to provide petitioner with a written denial of prior authorization and notice of fair-hearing rights. It denied reimbursement for the March expenses, however, stating that it was "confident the services offered by the providers that [petitioner had] chosen: a psychiatrist, pediatrician and dietitian are available in the state of Vermont." On July 6, 2005, petitioner appealed the Office's decision, requesting a fair hearing before the Human Services Board.

¶ 4. At a status conference in July 2005, the hearing officer requested that petitioner submit further information about the specific services provided to J.D. by the out-of-state doctors and directed the Office to review the information and either approve transportation funding or provide petitioner with the names of local physicians who could provide those special services to her son. Petitioner filed a letter from J.D.'s primary-care physician attesting to the medical necessity of J.D.'s out-of-state treatments, a "physician quality report" indicating the out-of-state pediatrician's specializations, a two-page curriculum vitae of the out-of-state pediatric psychiatrist, and a three-page abstract with descriptions of articles, books, and videos authored by the pediatric psychiatrist. In response, the Office

asked for dismissal of petitioner's appeal, claiming that the evidence submitted in support of her appeal was insufficient. Furthermore, the Office submitted statistics showing that a significant number of children in J.D.'s county are treated by local pediatricians, psychologists, and psychiatrists generally.

¶ 5. At a hearing on October 13, 2005, the hearing officer advised the Office that its submission was inadequate because it neither identified which, if any, of the local providers were qualified to meet the special needs identified by J.D.'s treating physician nor addressed the issue of continuity of care that J.D.'s treating physician highlighted as critical to his successful treatment. The Office requested and was given leave to submit additional evidence by October 21. No further evidence was submitted by that deadline. On November 4, 2005, the Board issued its order reversing the Office's decision to deny Medicaid transportation funding to petitioner based on the hearing officer's conclusion that: (1) petitioner had provided sufficient evidence that the out-of-state doctors have "a unique combination of qualifications which ideally suit them to provide the services needed by her son," and (2) the "vague, undetailed and unresponsive" evidence submitted by the Office was insufficient to refute petitioner's evidence.

¶ 6. On November 16, 2005, the Secretary of the Agency of Human Services issued an order modifying the Board's decision and remanding it for further proceedings. The Office moved the Board for an evidentiary hearing so that it could subpoena J.D.'s primary-care physician to explore the basis for his opinion. In a February 28, 2006 order, the Board declined to reconsider or amend its initial order, stating that the remand exceeded the Secretary's authority. The Office filed a motion to reconsider the February 28 order, which the Board denied. Both parties appeal.

¶ 7. We first consider the Office's main issue on cross-appeal: whether the Secretary has the authority to remand decisions to the Board. By statute, the Secretary must review all Board decisions pertaining to Medicaid and either adopt the Board's decision, or he "may reverse or modify a [B]oard decision or order if . . . the [B]oard's findings of fact lack any support in the record; or . . . the decision or order implicates the validity or applicability of any agency policy or rule." 3 V.S.A. § 3091(h)(1)(A)(i), (ii). In interpreting a statute, the Court initially looks to the plain meaning of the language used by the Legislature. *Burlington Elec. Dep't v. Dep't of Taxes,* 154 Vt. 332, 335-36, 576 A.2d 450, 452 (1990). Where the intent of the Legislature is ambiguous or unclear from the language, however, we consider the entirety of the statute, "its effects and consequences, and the reason and spirit of the law" to determine its true meaning. *Sargent v. Town of Randolph Fire Dep't,* 2007 VT 56, ¶ 9, 182 Vt. 546, 928 A.2d 525 (mem.) (citation omitted).

¶ 8. Petitioner's argument that the plain meaning of "reverse or modify" excludes a remand to the Board, even when additional factual findings are necessary, is unavailing. Considering the statute as a whole, the Secretary acts as an appellate body, reviewing the Board's findings and conclusions to ensure that it applied the appropriate legal standards under the relevant agency rules and policies, and that there is some factual support for its decision. See 3 V.S.A. § 3091(h)(1)(A)(i), (ii). As such, construing the Secretary's power to "modify" Board decisions as somehow excluding the authority to remand would effect an irrational result in situations where the Secretary determines that the Board applied the wrong legal standard but the factual findings on the record are insufficient to

make a determination under the appropriate standard. See *Judicial Watch, Inc. v. State*, 2005 VT 108, ¶ 16, 179 Vt. 214, 892 A.2d 191 (interpretations that lead to absurd or illogical results should be avoided). Furthermore, we have interpreted similar language to that found in § 3091(h)(1) as providing the superior court with the authority to remand for further findings when reviewing a school board renewal decision. See *Burroughs v. West Windsor Bd. of School Directors*, 141 Vt. 234, 237-38, 446 A.2d 377, 379-80 (1982). The rule at issue in *Burroughs* provided that the superior court "shall affirm, reverse, or *modify* the decision under review," and similarly failed to use the precise term "remand." V.R.C.P. 75(d) (emphasis added). Nonetheless, to effectuate the intent of the Legislature, we understood the term "modify" to include the power to remand where imperative to make an appropriate determination. *Burroughs*, 141 Vt. at 237, 446 A.2d at 380. The same reasoning applies here, and thus we hold that the Secretary's power to "reverse or modify" Board decisions includes the authority to remand when necessary to develop the record.

¶ 9. Next, we address petitioner's argument that regardless of the Secretary's power to reverse and remand, in the present case there was no legal basis to modify the Board's order. In his order remanding the case to the Board for further proceedings, the Secretary found that the Board's conclusions were not supported by the record below. In particular, he faulted the Board for failing to address the specific "services" provided by the out-of-state physicians that were medically necessary, and instead focusing on the providers' qualifications. Agency guidelines require that Medicaid transportation funding be provided for "necessary medical *services*"; however, the distinction between services provided by the physicians and the physicians' specific expertise qualifying them to treat J.D.'s

complex medical issues is inconsequential. See Medicaid Manual § M755, 5 Code of Vermont Rules 13 170 008-(pg. #) (emphasis added). J.D. was referred to the out-of-state doctors precisely because they have the specific qualifications and practice experience to provide him with the medical services that he needs. Furthermore, petitioner submitted evidence of the services provided by the Maryland practitioner in the form of a follow-up evaluation detailing the doctor's treatment plan for J.D. While specific services provided by the New York doctor were less detailed, petitioner provided evidence that J.D.'s treating physicians in Vermont and New Hampshire regularly defer to the New York pediatrician for consultation on matters relating to J.D.'s autoimmune disease. The record could have been better developed on the issue of specific services provided by the out-of-state practitioners, but the evidence presented to the hearing officer supported the Board's conclusion that the appointments were medically necessary, particularly given the Office's utter lack of evidence refuting petitioner's claim for transportation reimbursement. See 3 V.S.A. § 3091(h)(1)(A) (requiring Secretary to uphold Board's factual findings if there is *any* evidence supporting them). The Secretary is required to adopt the Board's conclusions if there is any credible evidence on the record supporting its findings. *Jacobus v. Dep't of PATH*, 2004 VT 70, ¶ 7, 177 Vt. 496, 857 A.2d 785 (mem.); *In re Potter*, 2003 VT 101, ¶ 10, 176 Vt. 574, 838 A.2d 105 (mem.).

¶ 10. Furthermore, the Board correctly concluded that petitioner met her burden of production under the Medicaid regulations and the Office's own procedures manual, by submitting "the attending physician's certification that the trip [was] medically necessary." See Medicaid Manual § M755, 5 Code of Vermont Rules 13 170 008-120, 121; Medicaid Transportation Procedures Manual, § 4.3.9 (Dec.

2000). Once petitioner made a prima facie showing of eligibility for the transportation funding, the burden shifted to the Office to prove either that the services provided by the out-of-state doctors are not medically necessary or that there are local providers with the unique combination of qualifications necessary to address J.D.'s complex medical needs. Its only response to petitioner's evidence, however, was to provide a list of local doctors with general specialties in areas such as psychiatry or pediatrics, with total disregard for J.D.'s specific needs or the importance of continuity of care evidenced by J.D.'s progress over the course of the seven years that he received treatment from the out-of-state physicians. Thus, the Board's factual findings appropriately reflected the inadequacy of the Office's evidence, and its decision should have been adopted by the Secretary. See *Jacobus*, 2004 VT 70, ¶ 7.

¶ 11. Finally, the Office's contention that the Board erred in refusing to consider its October 25, 2005 submission of a letter in response to a request for further evidence is unavailing. The Office claims that its letter, which included a list of local doctors with general specialities in pediatrics and psychiatry, was dated October 20 and mailed on October 21, the deadline for submission of additional evidence, and should have been considered by the Board in its decision. While the Board did not conduct an analysis based upon the untimely submitted evidence, it did address its contents in a footnote. That footnote not only acknowledged the letter, but noted that the evidence submitted by the Office did not "address the continuity of care issue," and that even if it was admitted, "it would not be sufficient to rebut the petitioner's prima facie showing of eligibility." Given petitioner's response to the Office's list of local providers — in which she outlined her extensive knowledge of and involvement with a number of the providers, her son's interaction with

several of them, and their unavailability or inability to treat her son effectively — the Board properly noted the insufficiency of the additional evidence. Thus, even if the letter was erroneously excluded by the Board, the error was harmless. Ultimately, the Board's decision was supported by ample evidence submitted by petitioner, and there was no legal basis for the Secretary to reverse and remand the decision.

*Reversed.*