2008 VT 93

**In re Marcella RYAN**

[958 A.2d 678]

No. 07-167

¶ 1. June 26, 2008. Petitioner Marcella Ryan's appeal stems from a Department of Aging and Independent Living decision to reduce the number of hours of in-home personal-care services that she receives pursuant to Choices for Care, a state-administered Medicaid waiver program. Petitioner argues that her need for personal-care services has remained the same, and therefore her previous award of 102 hours biweekly should not have been reduced. The Human Services Board concluded that there was insufficient evidence to support the Department's determination and found for petitioner; however, the Secretary of the Agency of Human Services reversed and reinstated the Department's decision authorizing fewer hours. We reverse the Secretary and reinstate the Board's decision.

¶ 2. Petitioner is a fifty-two-year-old disabled woman who suffers from muscular dystrophy, cerebral palsy, visual impairment, gastric problems, neurogenic bladder, chronic urinary tract infections, arthritis, chronic pain, and colonization by antibiotic-resistant bacteria. She has no use of her legs, limited use of her arms and hands, and is wheelchair bound. Since 2001, petitioner has received personal-care services through Department-administered Medicaid waiver programs to assist her with the activities of daily living, allowing her to remain in her home despite her health and functional limitations.

¶ 3. From December 2004 to December 2005, the Department provided petitioner with 102 hours of in-home personal-care services every two weeks based on an Independent Living Assessment completed by her case manager pursuant to Vermont's Home and Community Based Services (HCBS) Medicaid waiver program. In October 2005, the Department initiated a new Medicaid waiver program called Choices for Care (CFC) to replace HCBS. As an HCBS recipient, petitioner was automatically enrolled in the CFC program at the conclusion of the 2005 service year. Like HCBS, the CFC program provides the nonmedical services necessary for nursing-home-level Medicaid recipients to remain in the community and avoid institutionalization.

¶ 4. In November 2005, petitioner's case manager, Helen Turcotte, submitted an annual reassessment of petitioner's need for personal-care service hours. Using the Department's form to complete the assessment, Turcotte determined that petitioner's needs were essentially the same as they had been the prior year, and requested 102 hours of care every two weeks. Included in the calculation of 102 hours, petitioner requested a variance for certain activities of daily living, to allow her more personal-care services than the maximum time allotted by the program for those activities. On December 12, 2005, the Department notified petitioner that it was approving her for only 75 service hours biweekly for the period beginning December 16, 2005 and ending December 15, 2006. Petitioner filed a timely appeal, requesting a fair hearing.

¶ 5. On March 8, 2006, the hearing officer held a status conference at which the parties were asked to consider the reason for the reduction in service hours

and determine whether they could agree on the number of service hours needed by petitioner. In October 2006, petitioner's case manager again conducted an annual reassessment under the CFC program, and submitted a request for 97 hours of personal-care services every two weeks which also included a variance request for certain activities. Upon review of the assessment, the Department approved petitioner for 79.5 hours of personal-care services for the program year beginning in December 2006. Petitioner appealed the decision, again requesting a fair hearing.

¶ 6. The Board held a hearing on the appeals on January 8, 2007. At the hearing, the Department called a single witness, nurse Toni Morgan, the Long Term Care Clinical Coordinator who reviewed petitioner's reassessments on the Department's behalf and ultimately recommended reducing petitioner's personal-care service hours. Petitioner presented the testimony of her case manager and her longtime primary-care physician, and testified on her own behalf. In addition, she submitted a letter of support from the nurse who had assisted her case manager in completing the reassessments at issue. The Board determined that the Department had the burden of proof "to show a factual basis supporting a reduction of service hours," and that it failed to meet that burden in light of the evidence supporting petitioner's position that she maintained the same need for personal-care services as in past years. Thus, on March 23, 2007, the Board ordered the Department to provide petitioner with the service hours requested in the assessments prepared by petitioner's case manager.

¶ 7. On April 5, the Secretary of the Agency of Human Services reversed the Board's decision and reinstated the Department's service plan with the reduced hours. The Secretary reasoned that the Board's decision was unsupported by the evidence, and that the Board had misapplied the agency rule on notice of variance decisions. On April 13, 2007, petitioner appealed the Secretary's order to this Court.

¶ 8. On appeal, petitioner argues that the Secretary lacked any factual or legal basis on which to reverse the Board's findings and conclusions. Furthermore, she contends that the Secretary erred in determining that the Department's notice of reduction of benefits was adequate despite the fact that she was not provided separate notice of the denial of her variance requests.

¶ 9. To begin, the State of Vermont voluntarily participates in the federal Medicaid program. Medicaid was created, in part, to provide medical assistance to disabled individuals who lack the resources to meet their need for medical services, and rehabilitation and other services to help those individuals "attain or retain capability for independence or self-care." 42 U.S.C. § 1396. Pursuant to the Medicaid program, a participating state is permitted to apply for a waiver of certain requirements of the program to allow it to best meet the medical needs of its residents. CFC is a federally approved Medicaid waiver program developed by the Department to assist disabled Vermonters — who would otherwise "require the level of care provided in a hospital or a nursing facility" — to remain in their homes. *Id.* § 1396n(c)(1). The program provides in-home nonmedical services to nursing-home-level Medicaid recipients, including personal-care services such as dressing, bathing, and eating assistance based on an individual assessment of need. See Choices for Care 1115 Long-term Care Medicaid Waiver Regulations (VII)(2)(B)(5) (October 7, 2005).

¶ 10. Under HCBS, the predecessor to CFC, the Department determined that petitioner required nursing-home-level care and was eligible for in-home personal-care services. When it transitioned

to CFC, the Department automatically enrolled petitioner in the program. Consequently, petitioner's entitlement to personal-care services under the Medicaid waiver program is not at issue here. Rather, the question at the fair hearing was whether the reduction of petitioner's service hours from 102 hours biweekly to 75 hours biweekly and 79.5 hours biweekly, respectively for the 2006 and 2007 service years, was appropriate to protect petitioner's health and welfare as mandated by the program. See Choices for Care 1115 Long-term Care Medicaid Waiver Regulations (II)(A).

¶ 11. Petitioner first argues that the Board's decision, ordering the Department to provide the hours she requested in the assessments, was supported by substantial evidence, and that the Secretary therefore erred in reversing the Board's decision. Under 3 V.S.A. § 3091(h)(1)(A), the Secretary may reverse or modify a Board decision only if: "(i) the board's findings of fact lack any support in the record; or (ii) the decision or order implicates the validity or applicability of any agency policy or rule." See *Jacobus v. Dep't of PATH*, 2004 VT 70, ¶ 7, 177 Vt. 496, 857 A.2d 785 (mem.). Although in reversing the Board's decision, the Secretary reasoned that the Board lacked *any* support for its findings in favor of petitioner, she simply found the Department's evidence more credible and accepted it over petitioner's evidence — a role reserved for the trier of fact, in this case, the Board. See 3 V.S.A. § 3091(c) (Board issues findings of fact).

¶ 12. First, the Secretary credited the testimony of the Department's witness, Ms. Morgan, with respect to the issue of duplication of services. Ms. Morgan reviewed the reassessments submitted by petitioner's case manager, and after speaking with petitioner on the telephone, lowered the number of minutes per day allotted petitioner for dressing, bathing and personal hygiene assistance because a licensed nursing assistant visits petitioner for a little over an hour each morning and assists with some aspects of those activities of daily living. Petitioner's case manager, however, testified that she had already accounted for the assistance provided by the nursing assistant in the reassessment form she filled out. Based on this testimony, the Board was justified in determining that Ms. Morgan should not have deducted that time from the reassessment.

¶ 13. Furthermore, the Secretary found that petitioner's case manager erred in categorizing petitioner's level of functioning as "total dependence" for most of the "activities of daily living" assessed in the Independent Living Assessment, and again accepted Ms. Morgan's corrections to the assessment, giving petitioner the higher functionality classification of "extensive assist" for many of the activities listed. For example, Ms. Morgan changed petitioner's classification for dressing from "total dependence" to "extensive assist" because petitioner told her that she has some functioning in her arms and is able to assist her personal-care attendants with putting her arms through the sleeves of her shirts. The Board was not required to adopt Ms. Morgan's position, however, and as fact-finder, it had the discretion to evaluate the credibility of the witnesses and determine the weight that should be given to the evidence.

¶ 14. Here, the Board found petitioner's evidence in support of her need for 102 service hours biweekly more persuasive than the Department's evidence. This was, at least in part, due to the fact that petitioner's witnesses were more directly involved in her case and therefore more attuned to her individual needs. Petitioner's case manager met with petitioner for nearly two hours to fill out the assessment form. She had managed petitioner's case under the Medicaid waiver programs since 2003, and testified that she considered herself to be conservative in the

number of hours of personal-care services that she requested on behalf of her clients. Furthermore, she testified that she had completed somewhere in the range of sixty Independent Living Assessments on behalf of clients, that the CFC program assessments were substantially similar to those under the HBCS program, and that petitioner's needs had not really changed from the previous year. While she recognized that there are days that petitioner is more functional than others, she testified that it is difficult to categorize individual needs in such "black and white" terms and that overall petitioner needed to be classified "total dependence" for most activities in order to receive the care she required. Likewise, petitioner's physician of approximately six years testified that he believed petitioner's health would be jeopardized if her previous level of personal-care services was not maintained. He further recounted that petitioner had been hospitalized on at least six occasions over the previous seven months mainly for urinary tract infections due to catheterization, and that she was at high risk of bacterial infection if she did not receive significant personal hygiene care. In addition, receiving proper nutrition had been an issue for petitioner in the past and necessitated regular feedings, some through a G-tube. The doctor further testified, based on recent visits with petitioner, that her disease was progressing, causing increased weakness and decreased lung function. Finally, petitioner testified that there were miscommunications in her telephone conversation with Ms. Morgan, and that she believed she continued to require 102 hours of personal-care services to maintain her health and remain in the community.

¶ 15. Pursuant to the fair hearing rulings, the Department had the burden of proving that the reduction to petitioner's service hours sufficiently met her needs under the program. See Agency of Human Services, Fair Hearing Rule 11 (stating that "[t]he burden of proving facts alleged as the basis for agency decisions to . . . reduce an assistance grant . . . shall be on the agency"). The Board determined that the Department failed to meet its burden, apparently giving less weight to Ms. Morgan's testimony because she did not actually meet with petitioner and made her recommendations for hour reduction based on an hour long telephone conversation. On the other hand, the Board noted that petitioner's two witnesses were familiar with her particular situation and thus that their testimony was more credible on the issue of petitioner's individual health needs. The testimony of petitioner's three witnesses, in addition to the letter of support from the nurse who assisted in filling out petitioner's assessment forms, tended to establish that petitioner's need for personal-care services was substantially similar to that of past years in which she had received 102 hours, and that if her service hours were reduced, she was at risk of more frequent hospitalizations and potential institutionalization — the very situation the CFC program was intended to avoid. The Secretary in her decision erroneously replaced her judgment for that of the Board and determined that Ms. Morgan's calculation of petitioner's needs was more accurate. If the Board had found Ms. Morgan's testimony credible, it would not have been unreasonable for it to rule in the Department's favor. After hearing evidence from both sides, however, the Board evaluated the credibility of the witnesses and other evidence, and concluded that the Department failed to meet its burden. Because there was credible evidence in the record supporting the Board's findings, the Secretary was statutorily required to adopt its findings. 3 V.S.A. § 3091(h)(1)(A); *In re D'Antonio*, 2007 VT 100, ¶ 9, 182 Vt. 599, 939 A.2d 493 (mem.).

¶ 16. Nevertheless, the Department urges us to affirm the Secretary's deci-

sion, arguing that its decision to reduce petitioner's service hours should have been given deference by the Board. Both the Secretary and the Department erroneously relied on *Suzman v. Commissioner, Department of Health & Human Services*, for their assertion that the agency decision is owed deference. 2005 ME 80, 876 A.2d 29. In *Suzman*, Maine's Department of Health and Human Services reduced a Medicaid waiver program recipient's personal-care attendant hours based on a reassessment conducted by a Department-hired assessor. Maine's standard of review of agency decisions differs significantly from our own, however. The *Suzman* court was required to uphold the Department's decision to reduce the recipient's service hours unless its factual findings were clearly erroneous. *Id.* ¶ 24. The court considered the methodology and conclusions reached by the Department-hired assessor and determined that the Department's findings in favor of cutting personal-care service hours were fairly and reasonably supported. *Id.* ¶ 26. Thus, the court gave deference to the Department's decision.

¶ 17. In Vermont, on the other hand, parties aggrieved by a Department determination have the right to contest the decision at a fair hearing. 3 V.S.A. § 3091(a). At the fair hearing, both parties present their evidence to an impartial hearing officer who makes an independent decision based on the credibility of the evidence presented. See *In re Houston*, 2006 VT 59, ¶ 10, 180 Vt. 535, 904 A.2d 1174 (mem.) (holding that administrative fair hearing is a de novo evidentiary hearing). Unlike the administrative hearing process in Maine, the decision of the agency-hired assessor, here Ms. Morgan, is entitled to no special deference by the Board, the Secretary, or this Court on review. Rather, both the Secretary and this Court must defer to the Board's independent findings of fact unless they are completely unsupported by the record. *Jacobus*, 2004 VT 70, ¶ 7.

¶ 18. Furthermore, the Department asserts that the Board erred as a matter of law in determining that petitioner was entitled to receive the same number of service hours as in previous years. It relies on our recent decision in *Husrefovich v. Department of Aging & Independent Living*, in which we upheld a Board determination in favor of DAIL's decision to reduce Medicaid waiver beneficiaries' personal-care service hours. 2006 VT 17, ¶ 1, 179 Vt. 456, 898 A.2d 726. In that case, we rejected the petitioners' argument that they were entitled to receive the same level of services as in past years because the Department determined — and the petitioners did not refute — that they had previously received a level of services that exceeded their needs. *Id.* ¶ 26. Thus, we held that the petitioners were entitled to receive only the level of personal-care services that met their individual needs from year to year. *Id.* The Board's decision in this case is not in conflict with our holding in *Husrefovich.* Here, the Department did not dispute that the 102 hours of personal-care services that petitioner received in previous years was appropriate to meet her need at that time. Instead, it argued, based on Ms. Morgan's review, that petitioner was entitled to only 75 hours and 79.5 hours respectively for the reassessment years at issue. The Board, after a fair hearing, concluded, however, that the Department had not presented sufficient evidence to persuade it that petitioner's individual need for services was any less than it had been in previous years when she was determined to require 102 hours of services. Again, the Board ruled in favor of petitioner because it was convinced by the testimony that petitioner's individual needs would be met, and the goals of the program served, only if she received the requested 102 hours of services.

¶ 19. Finally, we decline to address the merits of petitioner's claim that she had a

due process right to notice of denial of variance requests separate from the notice of service plan. Because we reverse the Secretary's decision and reinstate the Board's decision with respect to petitioner's plan of care, the issue of proper notice of the variance decision is rendered moot with respect to petitioner.

*The Secretary's decision is reversed, and the Board's decision with respect to petitioner's plan of care is reinstated.*