2012 VT 95

## In re Marilyn Clifford

[71 A.3d 1120]

No. 12-114

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed November 9, 2012

*Jay Abramson* of *Law Office of Jay Abramson*, St. Johnsbury, for Appellant.

*William H. Sorrell*, Attorney General, Montpelier, and *Heidi J. Moreau*, Assistant Attorney General, Waterbury, for Appellee.

¶ 1. **Reiber, C.J.** Applicant Marilyn Clifford appeals the denial of long-term home-care benefits under the Medicaid-funded Choices for Care program, arguing that a second home on an adjacent piece of property should have been excluded from the financial-eligibility calculation. We affirm.

¶ 2. Applicant applied for Choices for Care in July 2011. The program provides financial assistance for case management, personal care, adult day services, and home modifications, among other things. The Department for Children and Families determines an applicant's financial eligibility for the program based on the applicant's available resources. Under state and federal rules, the department may exclude a limited number of resources, including the applicant's home, from the calculation to protect them for personal use.

¶ 3. The state Medicaid rule governing the home exclusion for countable resources provides, in relevant part:

> Home means the property in which an individual resides and has an ownership interest and which serves as the individual's principal place of residence. This property includes the shelter in which an individual resides, the land on which the shelter is located, related outbuildings, and surrounding property not separated from the home by intervening property owned by others . . . The home includes contiguous land and any other buildings located on the land.

Medicaid Rules § 4241.1.

¶ 4. The department concluded that applicant's resources exceeded the permitted threshold by $85,815.94 after including in its calculation the $97,900 value of a farmhouse applicant and her husband owned on a piece of land adjacent to their primary residence. The farmhouse was listed as a separate residence for

tax purposes, and applicant and her husband rented it out for $500 a month until the tenant died in August 2011. Although the department included the value of the farmhouse, it excluded the value of the piece of land on which the primary residence was situated and the other outbuildings, and specifically exempted the land associated with the farmhouse lot.

¶ 5. Applicant sought a fair hearing review by the Human Services Board. Before the board, she argued that the state rules implementing federal Medicaid policies exclude the value of an applicant's home, which, according to the board and secretary's understanding of the applicant's position, would include " 'all buildings of any type' so long as they are situated on land contiguous to the primary residence." The Human Services Board agreed with applicant and ordered the exclusion of the farmhouse.

¶ 6. The secretary of the Agency of Human Services reversed the board's decision. The secretary concluded that the board's interpretation of the home exclusion contradicted the plain language of Medicaid Rules § 4241.1, its legislative history, and the policy underlying the Medicaid program. This appeal followed.

¶ 7. On appeal, applicant contends that the language of the home-exclusion rule excludes "any building" on a contiguous piece of land from countable resources, and not simply those buildings that are related to the primary residence. Applicant maintains that the secretary's conclusion that the exclusion is limited to "related outbuildings" on both primary and contiguous lands renders the term "any other buildings" meaningless. We disagree.

¶ 8. The secretary of the Agency of Human Services may reverse or modify the Medicaid decisions of the Human Services Board when "the decision or order implicates the validity or applicability of any agency policy or rule." 3 V.S.A. § 3091(h)(1)(A)(ii). "Generally, we grant deference to the Secretary . . . regarding interpretations of the department's governing statutes and regulations, and will not disturb the Secretary's interpretations absent a compelling indication of error." *Jacobus v. Dep't of PATH*, 2004 VT 70, ¶ 23, 177 Vt. 496, 857 A.2d 785 (mem.). We look to the disputed statutory or regulatory language to determine whether an indication of such an error exists.

¶ 9. In this appeal, we must determine whether the applicable rule requires a second home located on an adjacent, contiguous piece of property to be excluded from an applicant's

countable resources. We conclude that the rule does not mandate such an exclusion. Rather, the rule limits the exclusion of buildings on an applicant's principal and contiguous properties to the "shelter in which an individual resides" and "related outbuildings." When construing statutes and regulations, specific provisions "generally trump more general ones." *Smith v. Desautels*, 2008 VT 17, ¶ 17, 183 Vt. 255, 953 A.2d 620 (citation omitted). Thus, we must interpret the rule's later reference to "any other buildings located on [contiguous] land" in the context of the more specific command that the department exclude only "related outbuildings" on the principal property. To permit the exclusion of *any* building on contiguous property would render the rule's language regarding related outbuildings incongruous. We therefore find no compelling indication of error in the secretary's conclusion that the Department for Children and Families correctly understood the Medicaid rule to permit the exclusion of only "the shelter in which the applicant resides," contiguous lands, and "related outbuildings."

■ ■ ¶ 10. We recognize that the rule's wording is not a model of clarity, but we observe that adopting an exclusion for buildings located on adjacent lands that is more expansive than the exclusion the rule permits for buildings located on the principal property flies in the face of common sense. When construing statutory and regulatory language, we presume that its drafters did not intend an interpretation that would yield "absurd or irrational consequences." See *Shlansky v. City of Burlington*, 2010 VT 90, ¶ 8, 188 Vt. 470, 13 A.3d 1075 (quotation omitted). Applicant urges us to adopt an interpretation that would, for example, require the department to exclude from countable resources the value of apartment complexes or retail fast-food service facilities located on contiguous land irrespective of their value. The rule's purpose is to protect and preserve an applicant's home. We can conceive of no rational reason why the drafters would limit the exclusion an applicant may claim to only "related" buildings on the property where the home is actually located while permitting the exclusion of any and all buildings further afield on adjacent parcels. We conclude that such a distinction is not only wholly irrational but also directly contravenes the purposes of the Medicaid program and the state legislative developments that led to the current home-exclusion rule.

¶ 11. Choices for Care is a federally approved Medicaid waiver program that permits the state to use Medicaid funds to provide in-home care for residents who would otherwise require hospitalization or placement in a nursing home. *In re Ryan*, 2008 VT 93, ¶ 9, 184 Vt. 597, 958 A.2d 678 (mem.). "Medicaid was created, in part, to provide medical assistance to disabled individuals *who lack the resources to meet their need for medical services*, and rehabilitation and other services to help those individuals 'attain or retain capability for independence or self-care.'" *Id.* (quoting 42 U.S.C. § 1396) (emphasis added). To achieve Medicaid's goal of assisting the truly needy, administrators have enacted regulations governing financial eligibility for its various programs. The financial eligibility rules balance the need to ensure that patients who can afford to pay their own medical bills do so with the need to preserve assets necessary for an applicant's own support. See, e.g., 20 C.F.R. § 416.1210 (requiring state programs to exclude certain personal assets from financial eligibility calculations). Permitting applicants to exclude a potentially limitless number of unrelated buildings on land contiguous to a primary residence would defeat this careful balance.

¶ 12. Nor does the rule's drafting history suggest any intention to offer such broad asset exclusions under the guise of a regulation designed to protect an applicant's interest in her home. In 2002, the state Legislature directed the department then responsible for determining long-term-care eligibility to more closely align its home-exclusion rules with the federal minimum exclusion and its accompanying regulatory definitions. 2001, No. 142 (Adj. Sess.), § 148(m)(1). Federal Medicaid regulations define an applicant's home "as any property in which an individual (and spouse, if any) has an ownership interest and which serves as the individual's principal place of residence. This property includes the shelter in which an individual resides, the land on which the shelter is located and related outbuildings." 20 C.F.R. § 416.1212(a). The state act specifically provided that Medicaid applicants would be "permitted to claim one principal place of residence as an excluded resource." 2001, No. 142 (Adj. Sess.), § 148(m)(1). In response, the department made several amendments to the home-exclusion rule aimed, in part, at clarifying "its intent that only one home be excludable." Vt. Dep't of Prevention, Assistance, Transition and Health Access, Bulletin No. 02-21F at 4 (June 28, 2002). The department's amendment of the home-

exclusion rule must be understood to comport with the Act's stated intent to exclude only the principal residence because an agency's regulations cannot exceed the scope of its statutory authority. Cf. *Martin v. State*, 2003 VT 14, ¶ 15, 175 Vt. 80, 819 A.2d 742 ("It is axiomatic that an administrative agency's power to promulgate regulations may extend only as far as its legislative grant of authority.") (citation omitted).[*]

¶ 13. Given the language of the regulation, the legislative history that led to its promulgation, and the policy considerations attending the Medicaid program, we conclude that the secretary correctly interpreted the home-exclusion rule when he reinstated the determination of the Department for Children and Families. Thus, we find no compelling indication of error in the secretary's determination and affirm.

*Affirmed.*

---

[*] The Legislature directed the department to make the changes as part of the Fiscal Year 2003 Appropriations Act. 2001, No. 142 (Adj. Sess.), § 148(m)(1). We consult the Act merely to help ascertain the intent of the home-exclusion rule's drafters. Because no party has challenged the department's authorization to enact such a regulation, we make no conclusion regarding whether the appropriations act, which was not codified in the Vermont Statutes Annotated, continues to constrain the department's regulatory authority beyond the expiration of the fiscal year covered by the legislation.